SUN LIFE ASSURANCE COMPANY OF CANADA, and Sun Life Assurance Company of Canada (U.S.), Appellants–Petitioners,

v.

INDIANA DEPARTMENT OF INSURANCE and Indiana Comprehensive Health Insurance Association, Appellees–Respondents.

No. 49A05–0610–CV–547.

Court of Appeals of Indiana.

June 13, 2007.

Michael E. Brown, Ginny L. Peterson, Kightlinger & Gray, LLP Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Wayne C. Turner, Anne L. Cowgur, McTurnan & Turner, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Petitioners, Sun Life Assurance Company of Canada, and Sun Life Assurance Company of Canada (U.S.) (collectively, Sun Life), appeal the trial court's Findings of Fact and Conclusions of Law denying its Petition for Judicial Review in favor of Appellees–Respondents, Indiana Department of Insurance and Indiana Comprehensive Health Insurance Association (collectively, ICHIA).

We affirm.

### ISSUES

Sun Life raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court erred by concluding that, pursuant to Indiana Code sections 27–8–10–2.1(g) and 27–8–10–14, ICHIA appropriately calculated Sun Life's 2004 True–Up Assessment based on the statutory methodology prescribed for the assessment period through December 31, 2004; and

(2) Whether the trial court erred by denying Sun Life's Motion to Strike certain facts which were not contained in the administrative record or attested to in affidavits, or included within other supporting testimony.

On Cross–Appeal, ICHIA raises one issue, which we restate as follows: Whether the trial court erred in finding that the Commissioner of the Indiana Department of Insurance acted arbitrarily and capriciously in dismissing Sun Life's appeal as untimely.

### FACTS AND PROCEDURAL HISTORY

ICHIA is a not-for-profit entity, created by statute in 1981, to "assure that health insurance is made available throughout the year to each eligible Indiana resident applying to [ICHIA] for coverage." *See* Ind. Code § 27–8–10–2.1. In other words, ICHIA is a legislatively created health insurance provider whose essential purpose is to provide health insurance coverage for certain high risk individuals in Indiana. Specifically, ICHIA insures Indiana residents who, as a result of their chronic and/or catastrophic illnesses have: 1) been refused coverage by at least one private insurer; 2) have one or several catastrophic illnesses automatically qualifying them for ICHIA coverage; or 3) would otherwise be able to obtain insurance only at a price higher than ICHIA's premium rate or with material underwriting restrictions. *See* I.C. § 27–8–10–5.1(b); *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 111 (Ind.Ct.App.2004).

The General Assembly requires all companies "providing health insurance or health care services in Indiana" to be members of ICHIA as a condition of doing business in the State. I.C. § 27–8–10–2.1(a). As a medical stop loss insurer registered to do business in Indiana, Sun Life is a member of ICHIA. *See Avemco*, 812 N.E.2d at 122. ICHIA exercises its powers through a Board of Directors (Board) and operates under a plan of operation established by its Board and approved by

the Commissioner of the Indiana Department of Insurance. *Id.* at 111.

Because ICHIA's premiums are limited by statute to 150–200 percent of the average rate for a designated market sector, while it, by its purpose and design, insures Indiana residents with the most serious health difficulties, ICHIA generates substantial operating losses. I.C. § 27–8–10–2.1(f). To recoup these losses, the General Assembly authorized and directed ICHIA to collect assessments from the member health insurance providers. I.C. § 27–8–10–2.1(g). Although the ICHIA statute provides that the assessment of members will occur following the close of the fiscal year, when the actual losses can be determined, the statute also authorizes interim assessments against members of the association if necessary to assure the financial capability of ICHIA to meet the incurred or estimated claims expenses or operating expenses of the association until the association's next fiscal year is completed. *See* I.C. § 27–8–10–2.1(g); *Avemco*, 812 N.E.2d at 112. Interim assessments are adjusted as necessary from one interim period to the next based on changes in facts and circumstances. ICHIA depends on its members' payment of these assessments, including interim assessments, to stay in operation and to provide the required healthcare coverage for its participants. *Avemco*, 812 N.E.2d at 112. At the close of the fiscal year, ICHIA issues to its members a final, true-up assessment based on the actual, final operating results for the fiscal year. In the true-up, each member's portion of the actual, total losses for the year is billed to that member, and ICHIA applies credit against the billed amount for all interim payments made during that year. *See id.*

In 2003, the ICHIA statute was revised to specify the methodology for its assessments. Specifically, the ICHIA assessment methodology was converted into a two-step process, requiring fifty percent of ICHIA's losses to be assessed according to the members' respective shares of the State's total insurance premiums with the other fifty percent assessed in proportion to the members' respective shares of the number of individuals in Indiana receiving health insurance. *See* I.C. § 27–8–10–14 (West 2004). Indiana Code section 27–8–10–14 was originally expected to be in effect from July 1, 2003 through March 15, 2004, but the legislature extended its applicability through the end of ICHIA's 2004 fiscal year, changing the expiration date to January 1, 2005. *See* P.L. 97–2004 § 101. Effective January 1, 2005, ICHIA's funding mechanism changed again, with the State providing a direct appropriation for seventy-five percent of the anticipated net loss with the members being assessed for twenty-five percent, based on the relative percentage of total premiums received. *See* I.C. § 27–8–10–2.1(g).

On December 1, 2004, ICHIA, through its executive director, issued the 2004 Interim III Assessment. This assessment notice was accompanied by a memorandum explaining that the 2004 Interim III Assessment, a total of $ 5,000,000, would be calculated in accordance with the 50–50 methodology described in I.C. § 27–8–10–14 and that assessments "for the entire year of 2004" would be based on that method. (Appellant's App. p. 91). The notice further added that beginning January 1, 2005, the assessments would be calculated pursuant to the 75–25 methodology stipulated in I.C. § 27–8–10–2.1(g).

On May 25, 2005, ICHIA issued its Notice of 2005 Interim I and 2004 True–Up Assessment, together with a memorandum, an invoice, and supporting calculation. The documents indicated that the 2004 True–Up Assessment was calculated pursuant to the 50–50 methodology, while

the first assessment for 2005 was based upon the new 75–25 methodology. Sun Life's total invoice amounted to $219,465.58, which was paid on June 14, 2005.

In a letter dated July 7, 2005, Sun Life notified ICHIA that it appealed ICHIA's use of the 50–50 methodology for the 2004 True–Up Assessment, as prescribed by I.C. § 27–8–10–14. Sun Life asserted that the January 1, 2005 expiration of I.C. § 27–8–10–14 prohibited ICHIA from utilizing the statute's methodology in calculating the 2004 True–Up Assessment for losses that were incurred before the January 1, 2005 expiration date but were not calculated or invoiced to its members until after the expiration of the statute. In an undated letter faxed to Sun Life on August 5, 2005, ICHIA's executive director notified Sun Life that its appeal was untimely and that it would not be forwarded to the ICHIA board for an administrative hearing.

On September 2, 2005, Sun Life appealed to the Commissioner, asserting that ICHIA's position on timeliness was incorrect and requesting the Commissioner to require ICHIA to recalculate the 2004 True–Up Assessment. On October 13, 2005, the Commissioner responded to Sun Life, in effect agreeing with ICHIA's executive director that Sun Life's appeal was untimely.

On November 10, 2005, Sun life filed its Petition for Judicial Review, requesting the trial court to review the Commissioner's order and to find the order to be arbitrary, capricious, and an abuse of discretion. On May 4, 2006, Sun Life filed its Motion for Summary Judgment asking the trial court to direct the Commissioner to order a recalculation of the 2004 True–Up Assessment by ICHIA. On June 20, 2006, ICHIA responded to Sun Life's motion with a Brief in Opposition to Sun Life's

Petition for Judicial Review, noting that the appropriate procedure and standard of review for a determination of the issues in this case is prescribed by the Administrative Orders and Procedures Act (AOPA) rather than Indiana's trial rules concerning summary judgment. On July 12, 2006, Sun Life filed a reply in support of its motion, together with a Motion to Strike certain facts and references in ICHIA's brief. On July 14, 2006, the trial court heard oral argument on the motions. During the hearing, Sun Life conceded that "AOPA is the guiding force here as what flexibility the [c]ourt has as far as looking at evidence and making judicial decisions." (Transcript pp. 5–6). On September 5, 2006, the trial court entered Findings of Fact and Conclusions of Law and Order. In its Order, the trial court concluded that the Commissioner's ruling was arbitrary and capricious because it was contrary to law but, nevertheless, on its merits ICHIA had used the correct methodology and statute when it calculated Sun Life's 2004 True–Up Assessment.

Sun Life now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Appeal

Sun Life's main contention revolves around the trial court's conclusion that ICHIA correctly calculated the 2004 True–Up Assessment in the beginning months of 2005 by using the statute in effect in 2004 but which had expired by January 1, 2005. Specifically, Sun Life asserts that as ICHIA performed the disputed calculations in May of 2005, it should have used the statute then in effect, *i.e.*, I.C. § 27–8–10–2.1(g), stipulating the 75–25 methodology. Conversely, ICHIA, relying on the plain language of the statute and the legislature's intent, claims that the statute in

effect throughout the 2004 fiscal year, required ICHIA to assess losses under the 50–50 methodology following the close of the fiscal year.

## A. *ICHIA's Methodology*

### 1. *Standard of Review*

 Under Indiana Trial Rule 52(A), the trial court was required to enter, and did enter, special findings of fact and conclusions thereon in support of its judgment. When the trial court has entered special findings and conclusions, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Staresnick v. Staresnick,* 830 N.E.2d 127, 131 (Ind.Ct.App.2005), *reh'g denied.* We will only set aside the trial court's findings and conclusions if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law *de novo.* *Id.*

### 2. *Analysis*

 Resolution of this issue requires this court to construe two statutes: I.C. § 27–8–10–14 and I.C. § 27–8–10–2.1(g). The interpretation of a statute is a legal question that is reviewed *de novo.* *Avemco,* 812 N.E.2d at 115. Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id.* The first and often the last step in interpreting a statute is to examine the language of the statute. *Id.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.*

Indiana Code section 27–8–10–14 provides:

(a) Notwithstanding section 2.1 of this chapter:

(1) fifty percent (50%) of any net loss determined under section 2.1 of this chapter shall be assessed by the association to all members in proportion to their respective shares of total health insurance premiums, excluding premiums for Medicaid contracts with the State, received in Indiana during the calendar year (or with paid losses in the year) coinciding with or enduring during the fiscal year of the association;

(2) fifty percent (50%) of any net loss determined under section 2.1 of this chapter shall be assessed by the association to all members in proportion to their respective shares of the number of individuals in Indiana who are covered under health insurance provided by a member, excluding individuals who are covered under Medicaid contracts with the State during the calendar year coinciding with or ending during the fiscal year of the association.

(b) This section expires January 1, 2005.

Effective January 1, 2005, Indiana Code section 27–8–10–2.1(g) states:

Following the close of the association's fiscal year, the association shall determine the net premiums, the expenses of administration, and the incurred losses for the year. Twenty-five percent (25%) of any net loss shall be assessed by the association to all members in proportion to their respective shares of total health insurance premiums as reported to the department of insurance ... Seventy-five percent (75%) of any net loss shall

be paid by the State ... The association may also provide for interim assessments against members of the association if necessary to assure the financial capability of the association to meet the incurred or estimated claims expenses or operating expenses of the association until the association's next fiscal year is completed.... Assessments must be determined by the board members specified in subsection (b)(1), subject to final approval by the commissioner.

While the parties do not dispute that I.C. § 27–8–10–14, the 50–50 methodology, applied throughout the entire 2004 year, they contest the appropriate methodology used to determine the 2004 True–Up Assessment for actual net losses incurred in 2004 but calculated in 2005.

The plain reading of I.C. § 27–8–10–14 instructs ICHIA to determine its net losses "under section 2.1" and to assess them to all members based on the 50–50 methodology. *See* I.C. § 27–8–10–14. The incorporated section 2.1 requires ICHIA to calculate its net losses "following the close of the association's fiscal year." *See* I.C. § 27–8–10–2.1(g). Read together, the statute establishes that ICHIA's net losses for 2004 should be determined at the end of its fiscal year pursuant to the 50–50 methodology. This year-end actual net loss calculation takes into account the members' interim assessments in relation to the final operating results for the fiscal year. Thus, it is logical that ICHIA performs this calculation when all losses are known and incurred after the end of the fiscal year 2004. As the designated evidence reflects that ICHIA's 2004 fiscal year ended on December 31, 2004, ICHIA could only realistically assess its 2004 True–Up during the 2005 calendar year, while employing the 2004 methodology.

■ This interpretation comports with the legislative intent, as evidenced by the statutory amendment, moving the expiration date of I.C. § 27–8–10–14 from March 15, 2004 to January 1, 2005. *See* P.L. 51–2004 § 9. A statutory amendment changing a prior statute indicates a legislative intent that the meaning of the prior statute has changed, unless it clearly appears that the amendment was passed to clarify the legislature's original intent. *Wright v. Fowler,* 459 N.E.2d 386, 389 (Ind.Ct.App. 1984). By amending section 14, the legislature ensured its continuing applicability throughout ICHIA's 2004 fiscal year. Accepting Sun Life's interpretation would make the amendment redundant as the entire 2004 assessment would have to be recalculated in 2005 using a wholly different methodology.

However, in support of its argument, Sun Life focuses this court's attention on P.L. 51–2004 § 12 which provides that:

The amounts certified to the budget agency under I.C. [§ ] 27–8–10–2.1(*o*), as amended by this act, beginning January 1, 2005, and ending June 30, 2005, are appropriated to the budget agency for its use in making the payments required by I.C. [§ ] 27–8–10–2.1(g), as amended by this act, beginning January 1, 2005, and ending June 30, 2005.

While P.L. 51–2004 § 12 appears to be ambiguous at first glance, it becomes clear when read in conjunction with the referenced I.C. § 27–8–10–2.1(*o*). Indiana Code section 27–8–10–2.1(*o*) states that "[t]he association shall periodically certify to the budget agency the amount necessary to pay seventy-five percent (75%) of any net loss as specified in subsection (g)." Thus, the legislature, abundantly aware of ICHIA's dependence on the payment of interim assessments to provide coverage for its insureds, sought assurance that ICHIA could continue to assess the State for estimated 2005 losses in the period between January 1, 2005 to June 30, 2005.

Unlike Sun Life, we do not interpret P.L. 51–2004 § 12 as clarifying the 2004 True–Up Assessment methodology.

In sum, based on the designated evidence before us and the legislature's intent, we conclude that the trial court's conclusion is not clearly erroneous. *See Staresnick*, 830 N.E.2d at 131. Therefore, we decline Sun Life's invitation to set aside the trial court's Order.

### B. *Sun Life's Motion to Strike*

■ Next, Sun Life contends that the trial court erred by denying its Motion to Strike certain facts which were not present in the administrative record, supported by affidavit, or other evidence. Essentially, in its Motion to Strike Sun Life objected to certain alleged facts, including (1) any unsupported allegations that the Commissioner was "familiar with," "understands," "knows," and "knew;" (2) any allegations as to what Sun Life "knows;" (3) that ICHIA received and resolved administrative challenges to the calculation of the various assessments; (4) that the State paid the Interim I Assessment for fiscal year 2005 with funds appropriated for the period January 1, 2005 to June 30, 2005; and (5) that the State "could potentially be responsible for an unbudgeted payment in excess of $21,000,000." (Appellant's Br. p. 18 and Appellant's App. p. 150).

■ A trial court has broad discretion in ruling on a motion to strike. *Norfolk Southern Ry. Co. v. Estate of Wagers*, 833 N.E.2d 93, 100 (Ind.Ct.App.2005), *trans. denied*. Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Id.* Thus, we reverse a trial court's decision only if that decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 101. Further, the trial court's decision will not be reversed unless prejudicial error is clearly shown. *Id.*

In its Order, the trial court acknowledged to treating "these references as mere argument, not facts, and therefore the references need not be stricken." (Appellant's App. p. 16). Our review of the Order clearly supports the trial court's recognition. Nowhere in its findings and conclusions does the trial court allude to or even mention the disputed facts. As it is clear that the trial court did not rely on these allegations in reaching its judgment, we conclude that Sun Life failed to establish the prejudice necessary to reverse the trial court's denial to grant its Motion to Strike. *See id.* Therefore, we affirm the trial court.

### II. *Cross–Appeal* [1]

■ On cross-appeal, ICHIA disputes the trial court's review of Sun Life's Petition for Judicial Review on its merits. In particular, referring to I.C. § 27–8–10–2.6(a), ICHIA asserts that Sun Life was required to appeal its December 2004 Notification that the 50–50 methodology would be used in calculating the 2004 True–Up Assessment. Because Sun Life did not appeal this decision on the methodology until seven months after receiving notice of that decision, ICHIA now maintains that Sun Life's administrative appeal was untimely. On the other hand, Sun Life alleges that as a member can only appeal an administrative decision when it

---

1. In its Brief, ICHIA concedes that in light of the trial court's ruling on the merits of Sun Life's administrative challenge, the error raised on cross-appeal is harmless. However, because of its importance, ICHIA encourages this court to review the issue. Nevertheless, in its Reply Brief, ICHIA states the opposite: "[t]he issues in the cross appeal become relevant only if this [c]ourt finds it cannot affirm the trial court's holding as a matter of law...." (Appellees' Reply Br. p. 1). Regardless, we will address the issue on its merits.

is "aggrieved," Sun Life timely appealed because this required condition was not present until May of 2005 when it received the invoice for the 2004 True–Up Assessment. *See* I.C. § 27–8–10–2.6(a).

■ The AOPA limits judicial review of agency action. Agency action subject to AOPA will be reversed only of the court "determines that a person seeking judicial relief had been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." I.C. § 4–21.5–5–14(d). We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law *de novo*. *Huffman v. Office of Environmental Adjudication*, 811 N.E.2d 806, 809 (Ind.2004). In the instant case, the trial court relied on the capricious prong of the statute in reaching its conclusion that Sun Life had timely appealed.

Indiana Code section 27–8–10–2.6(a), stipulating ICHIA's members' appeal procedure, provides that "[i]f a member is aggrieved by an act of the association; ... the member or health care provider shall, not more than ninety (90) days after the act occurs, appeal to the board of directors for review of the act." In *Huffman*, our supreme court analyzed the term "aggrieved" in light of AOPA and concluded that "to be 'aggrieved'..., a person must have suffered or be likely to suffer in the immediate future harm to a legal interest." *Huffman*, 811 N.E.2d at 810.

In support of their respective arguments, the parties refer to the same designated evidence: ICHIA's executive director's Memorandum and Notice, dated December 1, 2004. Both documents indicate as their subject heading "2004 Interim Assessment III." (Appellant's App. pp 91–92). The Memorandum continued as follows:

> Enclosed you will find an assessment invoice along with its supporting calculation. At the ICHIA Board of Directors meeting on November 12, 2004, an Interim III Assessment for 2004 in the amount of $5,000,000 was approved. The assessments for the entire year of 2004 will be based 50% on the "premium method" and 50% on the "covered life method."
>
> Beginning January 1, 2005, the funding mechanism will change. The State of Indiana will provide a direct appropriation for 75% of the anticipated net losses and the Member Carriers will be assessed for 25%. The Member Carriers' assessment will be based on the relative percentage of total premiums received under the "premium method."

(Appellant's App. p. 91). The Notice, attached to the Memorandum, merely provides that as a member, Sun Life is to share in the net loss for the Interim III Assessment. The Notice further specifies the address to make the payment and the procedure to file an appeal.

Based on the content of both documents, we agree with the trial court's finding that ICHIA's Memorandum and Notice is not sufficient to notify Sun Life of its liability for the 2004 True–Up Assessment. The documents are devoid of any reference to or calculation method regarding the True–Up and solely reiterate the methodology set forth to compute the Interim Assessments in accordance with the statute in effect at that time. Thus, upon receipt of the December 1, 2004 Memorandum and Notice, Sun Life was not aggrieved and

consequently was not mandated to appeal within ninety days. *See id.*

Sun Life became aggrieved when it received ICHIA's "Notice of 2005 Interim I and 2004 True–Up Assessment" on May 25, 2005, together with a Memorandum, Explanation of the calculations, and Invoice. (Appellant's App. pp. 84–87). Unlike the December 1, 2004 documents, this Memorandum and attached information clearly establish the amount and methodology used to calculate the 2004 True–Up Assessment, now disputed by Sun Life. Sun Life appropriately filed an appeal to the Board within ninety days of receipt of the May 25, 2005 Notice. *See* I.C. § 27–8–10–2.6(a).

Pursuant to Indiana Code section 27–8–10–2.6(b), if within thirty days after filing an appeal, the Board has not acted on it, ICHIA's member may appeal to the Commissioner. The designated evidence shows that, in response to Sun Life's appeal, the insurance company received a letter from ICHIA's executive director, which stated:

> As ICHIA's Executive Director, I received a copy of your July 7, 2005 letter and reviewed the issues raised therein. The appeal sought by the Sun Life entities is untimely under Indiana Code section 27–8–10–2.6.

> . . .

> Because Sun Life's appeal is untimely under the statute, it has not been forwarded to the Board for an administrative ruling.

(Appellant's App. p. 155). Sun Life did not receive any further correspondence pertaining to its appeal to the Board.

The statute is clear that only the Board has the authority to evaluate and act upon an appeal brought by ICHIA's members. A letter from ICHIA's executive director

deciding, unsupported by any statutory authority, that Sun Life's appeal was untimely cannot be considered to constitute an action taken by the Board. As such, we find that the Board failed to act and Sun Life appropriately appealed to the Commissioner for review of its appeal on the merits. On October 13, 2005, the Commissioner, having evaluated Sun Life's appeal, responded that "[t]he department does not agree with the assertion that ICHIA has failed to act. . . . ICHIA determined that the appeal was not timely filed. . . . The department does hereby uphold ICHIA's decision that the appeal was not timely filed." (Appellant's App. p. 77).

In light of the Commissioner's response, we agree with the trial court's conclusion that the Commissioner's finding is arbitrary, capricious, contrary to law, and unsupported by the record. *See* I.C. § 4–21.5–5–14(d). As actions taken by ICHIA's executive director cannot be a substitute for any action taken by the Board, the Commissioner's decision that ICHIA's Board had indeed taken a decision is therefore contrary to law. Accordingly, since Sun Life exhausted its administrative appeals by timely appealing within the statutory time limits, we find that the trial court had jurisdiction to determine the merits of its appeal. *See* I.C. § 27–8–10–2.6(e). As a result, we refuse to disturb the trial court's determination.

## CONCLUSION

Based on the foregoing, we find that the trial court properly concluded that ICHIA appropriately calculated the 2004 True–Up Assessment for Sun Life based on the statutory methodology prescribed for the assessment period through December 31, 2004. We also find that the trial court did not err by denying Sun Life's Motion to Strike.

With regard to ICHIA's Cross–Appeal, we affirm the trial court, finding that the Commissioner acted arbitrarily, capriciously, and contrary to law in dismissing Sun Life's appeal as untimely.

Affirmed.

NAJAM, J., and BARNES, J., concur.