Robert THOMPSON, Thompson's M/C Incorporated, and Thompson Realty, LLC, Appellants–Plaintiffs,

v.

VIGO COUNTY BOARD OF COUNTY COMMISSIONERS, Famco Fabrication Works, LLC, and Gregory L. Gibson, Individually, Appellees–Defendants.

No. 84A04–0701–CV–26.

Court of Appeals of Indiana.

Nov. 30, 2007.

Ronald C. Smith, Peter S. Kovacs, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellants.

James S. Stephenson, Wayne E. Uhl, Stephenson Morow & Semler, Debra H. Miller, James R. Fisher, Miller & Fisher, LLC, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Robert Thompson, Thompson's M/C Inc., and Thompson Realty, LLC (collectively, Thompson), appeal the trial court's Order granting Appellee–Defendant's, Vigo County Board of County Commissioners (Vigo County), Motion to Dismiss Count I of Thompson's Complaint. Additionally, Thompson appeals the trial court's Order granting Appellees–Defendants', Famco Fabrication Works, LLC (Famco) and Gregory L. Gibson (Gibson), Motion to Dismiss Count II of Thompson's Complaint.

We affirm.

### ISSUES

Thompson raises two issues on appeal which we restate as follows:

(1) Whether the trial court erred by granting Vigo County's Motion to Dismiss because Count I of Thompson's Complaint should be certified as a public lawsuit, subject to the provisions of Indiana's Public Lawsuit Statute; and

(2) Whether the trial court erred by granting Famco's and Gibson's Motion to Dismiss because Count II of Thompson's Complaint cannot be sustained under the statutory antitrust violations.

### FACTS AND PROCEDURAL HISTORY

Robert Thompson owns and operates Thompson's Motorsports, which sells new and used cars and motorcycles on land owned by Thompson Realty, LLC. The company is incorporated in Indiana and has its principal place of business in Terre Haute, Indiana. Famco is an Indiana Limited Liability Company, owned and operated by Gibson.

In January of 2004, Thompson became aware that Vigo County was interested in relocating the County highway garage, which was directly located across the street from Thompson's property. As he was interested in purchasing Vigo County's real estate in an effort to expand his business, he contacted various Commissioners of Vigo County. During a meeting with the President of the Commissioners, Thompson was informed that the County was in the process of selling the real estate and that "it's already a done deal." (Appellant's App. p. 16). Nevertheless, between January and March 2004, Thompson communicated his desire for an opportunity to purchase the real estate several times. In March of 2004, Vigo County indicated that if Thompson was interested in purchasing the real estate, he would have to discuss it with Gibson.

On March 17, 2003, prior to publication of the Notice to Offer, Vigo County obtained an appraisal for the real estate, listing its value as $323,500. A second appraisal was performed on May 28, 2004. Although this appraisal was completed within six months of the exchange, the appraiser did not personally inspect the property. Instead, he reviewed the earlier appraisal and noted his concurrence with it.

On June 26, 2004, Vigo County published a Notice of Offer to Exchange Real Property, which stated in relevant part:

TERMS & CONDITIONS OF TRANSACTION:

The transaction will be an exchange for property of comparable value, properly zoned for use by [Vigo] County as a

highway garage and office (M–1 Light Industry District). [Vigo] County needs an office building and maintenance garage consisting of approximately 13,000 square feet to relocate the County Highway Department with adequate ingress/egress for heavy equipment and industrial trucks and large parking area.

(Appellant's App. p. 17). Famco submitted the only bid in response to the Notice of Offer; Thompson did not bid on the real estate. On or about August 24, 2004, Vigo County transferred the real estate by deed to Famco.

Approximately, two years later, on June 23, 2006, Thompson filed his Complaint, asserting Vigo County violated the statutory bidding procedures and contending Famco violated Indiana's antitrust law. On August 18, 2006, both Famco and Vigo County separately filed a Motion to Dismiss Thompson's Complaint. On September 11, 2006, Thompson filed its Consolidated Response to Famco's and Vigo County's Motions to Dismiss. On September 21, 2006, Famco filed its reply brief. On December 13, 2006, the trial court granted Vigo County's Motion to Dismiss, dismissing Count I of Thompson's Complaint for failing to state a claim. Thereafter, on April 19, 2007, the trial court granted Famco's Motion to Dismiss, dismissing Count II of Thompson's Complaint for failure to state a claim.

Thompson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■ A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortg. Corp. v. Condra,* 865 N.E.2d 602, 605 (Ind.2007). Thus, our review of a trial court's grant or denial of a

motion based on Indiana Trial Rule 12(B)(6) is *de novo. Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, with every reasonable inference construed in the non-movant's favor. *Id.* A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.*

### II. *Public Lawsuit*

Thompson first contends that the trial court erred in dismissing its claim against Vigo County because he failed to comply with the statutory requirements of a public lawsuit pursuant to I.C. § 34–13–5–1 *et seq.* Indiana Code sections 34–13–5–1 *et seq.* govern the procedures for testing public improvements of municipal corporations through a public lawsuit. Indiana Code section 34–6–2–124 defines a public lawsuit as:

(a) "Public Lawsuit" for purposes of I.C. § 34–13–5, means:

(1) any action in which the validity, location, wisdom, feasibility, extent, or character of construction, financing, or leasing of a public improvement by a municipal corporation is questioned directly or indirectly, including but not limited to suits for declaratory judgments or injunctions to declare invalid or to enjoin the construction, financing, or leasing; and

(2) any action to declare invalid or enjoin the creation, organization, or formation of any municipal corporation.

(b) The definition of "public lawsuit," as used in I.C. [§ ] 34–13–5, shall not be construed to broaden any right of action as is validly limited by applicable law.

Additionally, I.C. § 34–13–5–2(a) stipulates that the plaintiffs in a public lawsuit "sue

in their capacity as citizens or taxpayers of the municipal corporation."

The Public Lawsuit Statute has been in place since 1967. It reflects the General Assembly's recognition that the mere pendency of a lawsuit can frustrate a project even if the claims are eventually found to be without merit. *Bonney v. Indiana Finance Authority,* 849 N.E.2d 473, 478 (Ind. 2006). The statute acknowledges that litigation can be deployed to delay and sometimes even defeat public projects, and can be driven by a variety of motivations, some of which may have little to do with the merits of the project from the perspective of the general public. *Id.*

Here, applying the statute to Thompson's claim against Vigo County, the trial court determined:

> Despite Thompson's argument that this suit is not a "public lawsuit," a reasonable interpretation of his complaint is that it is an "action in which the validity, location, wisdom, feasibility, extent or character of construction, financing or leasing of a public improvement by a municipal corporation is questioned ..." Taking Thompson's allegations as true (which is legally required in ruling on a motion to dismiss), and without restating all the pertinent facts in the record, he is questioning the wisdom and character of the various transactions surrounding the "swap" of property between Vigo County and [Famco] resulting in the leasing of a public improvement (i.e., the building now known as the Vigo County Community Corrections building) by Vigo County from [Famco]. Although Thompson attempts to distinguish certain elements of his case from the public lawsuit definition, the "public lawsuit" statute provides: "No action may be brought except as provided in this chapter if it could have been the subject of a public lawsuit." I.C. [§ ] 34–13–5–10.

Thus even though a litigant wishes to proceed with an action as though it was a private lawsuit it was the intent of the legislature that if it can reasonably fit within the definition of a public lawsuit then it must be treated as one.

(Appellant's App. p. 9).

Requesting us to strictly construe the statute at issue, Thompson now argues that the swap or exchange of real estate between Famco and Vigo County cannot be characterized as the "construction, financing or leasing of any public improvement." *See* I.C. § 34–6–2–124. Consequently, he maintains that the trial court erred by imposing the statutory provisions of a public lawsuit on the instant cause.

Resolution of this issue requires us to construe the public lawsuit statute. The interpretation of a statute is a legal question that is reviewed *de novo. Sun Life Assur. Co. of Canada v. Indiana Dept. of Ins.,* 868 N.E.2d 50, 55 (Ind.Ct.App.2007), *trans. denied.* Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id.* The first and often the last step in interpreting a statute is to examine the language of the statute. *Id.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.*

■ Traditionally, a public lawsuit challenges the bidding process for construction of a new building or other public improvement. *See, e.g., Huber v. Franklin Co. School Bd. of Trustees,* 507 N.E.2d 233 (Ind.1987) (financing for construction of a new high school); *Pepinsky v. Monroe Co. Council,* 461 N.E.2d 128 (Ind.1984) (financing through lease arrangement of new jail); *Bigley v. MSD of Wayne Township Schools,* 823 N.E.2d 278 (Ind.Ct.App.2004), *trans. denied* (challenge to bidding for con-

struction of a pool within a new school building). However, today we are asked to decide whether a less traditional business method, *i.e.*, a real estate exchange, can be properly certified as a public lawsuit within the confines of I.C. § 34–13–5.

Here, Vigo County published a Notice of Offer to Exchange Real Property on June 26, 2004. Specifically, in an attempt to improve its facilities, the offer proposed a swap of the County's Ohio Street property for similar valued property, consisting of an office building and maintenance garage with a surface of approximately 13,000 square feet. Even though no money changed hands, Vigo County clearly offered to finance the new acquisition by trading its old property. By challenging that Vigo County's failure "to obtain appropriate appraisals in accordance with I.C. § 36–1–11–4" harmed the County's taxpayers, Thompson's action goes to the heart of the question concerning whether or not it would be in the public interest for the County to proceed with the project. (Appellant's App. p. 20). In essence, Thompson is indirectly disputing the wisdom and feasibility of financing a new highway garage by Vigo County. *See* I.C. § 34–6–2–124. This is exactly the type of action contemplated by the Public Lawsuit Statute.

Although Thompson attempts to lift his cause out of the Public Lawsuit realm by focusing on his private damages, we are not convinced. Thompson asserts that he is suing Vigo County as an individual landowner protecting his own business interest. In that light, Thompson directs our attention to *Pepinsky*, 461 N.E.2d at 132–33, where our supreme court stated that the controlling factor in a public lawsuit is whether the plaintiff seeks to protect a public or private interest. *See also City of Elkhart v. Curtis Realty Co.*, 253 Ind. 619, 256 N.E.2d 384, 388 (1970) ("Public Law-suit Statute does not apply to appellee's suit wherein it challenges, as a landowner, the legality of the board proceedings which are part or are so closely related to the exercise by the appellant of its power of eminent domain to take appellee's land").

However, in *Gariup v. Stern*, 254 Ind. 563, 261 N.E.2d 578, 582 (1970), our supreme court held that in an action that combined and commingled a private lawsuit brought by the bidder on a public project and a private lawsuit brought by citizen taxpayers, the whole action must be treated as a public lawsuit since the two causes were so commingled in the complaint that they could not be treated separately. Even though we are faced here with one party asserting both a status as a private party and a claim in name of "the Vigo County taxpayers [who] have been harmed," we apply *Gariup's* holding as the two claims are based on identical facts and circumstances.

▮ Furthermore, our interpretation of the Public Lawsuit Statute is in line with the legislature's intended purpose "to protect the public against a 'flood of harassing litigation' which obstructs and delays public improvement." *Hughes v. City of Gary*, 741 N.E.2d 1168, 1171 (Ind.2001). This policy applies regardless whether the public improvement is new construction financed by a loan or the acquisition of an existing facility financed by an exchange of real estate. Both situations carry the risk of protracted lawsuits. Therefore, based on the facts before us we affirm the trial court's determination of Thompson's cause against Vigo County as a public lawsuit.

### III. *Antitrust Statute*

Thompson next contends that the trial court erred in dismissing his claim against Famco. Specifically, Thompson argues that Famco colluded with Vigo County by engaging in a scheme geared to restrain

bidding and restrict free competition in violation of I.C. §§ 24–1–2–3 and 24–1–2–7. Asserting that the Notice to Offer was unduly restrictive as to ensure only Famco satisfied its requirements, Thompson was excluded from the bidding process. As a result, he had to purchase additional property and erect buildings to expand his business.

■ Indiana Code section 24–1–2–3 makes unlawful acts which operate to restrain open and free competition in bidding to obtain contracts for public and private work. Pursuant to I.C. § 24–1–2–7, a person injured in his business or property by a violation of this statute may bring a civil action seeking treble damages, costs and attorney fees. Due to the dearth of decisions under the Indiana statute, our courts use decisional law under the similar federal antitrust law, section 4 of the Clayton Anti–Trust Act, 15 U.S.C. Section 15. *City of Auburn Through Bd. of Public Works and Safety v. Mavis*, 468 N.E.2d 584, 585 (Ind.Ct.App.1984). Federal case law requires a plaintiff to prove three essential elements: 1) a violation of the statute, 2) injury to a person's business or property proximately caused by the violation, and 3) actual damages. *Id.*

■ In response to Thompson's claim, Famco focuses on the causality of the damages. Specifically, Famco maintains that Thompson failed to prove that, but for the anti-trust violation, he would have gotten the bid. In support of its contention, Famco cites to *Ovitron Corp. v. Gen. Motors Corp.*, 512 F.2d 442 (2d Cir., 1975); *M.C. Mfg. Co., Inc. v. Texas Foundries, Inc.*, 517 F.2d 1059 (5th Cir., 1975); *A.J. Goodman & Son, Inc. v. United Lacquer Mfg. Corp.*, 81 F.Supp. 890 (D.Mass.1949). In each of these three cases, the court held that the plaintiff failed to prove it would have received the contract but for the violation. Thompson now distinguishes all

three of Famco's cases on the ground that each case involved a damage claim for lost profits, whereas Thompson claims damages because of his exclusion from the bidding process.

We find Thompson's distinction to be without import. Even discounting the fact that Thompson is seeking additional expenses instead of lost profits, he is not relieved of the obligation to establish that he has been harmed by the alleged violation. In the case before us, Thompson did not submit a bid in response to Vigo County's Notice of Offer. Therefore, it would be difficult to prove, let alone, speculate, that Thompson would have been the successful bidder but for the purported collusion between Famco and Vigo County.

The sole case cited by Thompson in support of his argument is *City of Auburn v. Mavis*, 468 N.E.2d 584 (Ind.Ct.App. 1984). However, in *City of Auburn*, the City and the successful bidder did not dispute the trial court's ruling that a violation of the antitrust statute had occurred. *Id.* at 586. Rather, responding to Mavis' claim for damages in preparing a bid, the City maintained that this type of expenses is inherent in any competitive bidding. *Id.* We disagreed and held that "[w]hen the bidding was no longer open and competitive due to collusion between the government and a favored bidder, injury in the form of lost time in preparing a useless bid was a *direct result* of the antitrust violation." *Id.* (emphasis added). In other words, we stated that if the plaintiff limits his damage claim to the expenses incurred in preparing his bid, which was made worthless by the acknowledged violation, he need not show that he would have been the successful bidder but for the violation, because nothing more is necessary to establish that such type of injury "naturally flows" from the unlawful act. *See id.*

Thompson now asserts that because of the overly restricted Notice of Offer, he was prevented from presenting a bid and therefore, he had to purchase additional property at a higher price. As such, he maintains that his damages are analogous to *the City of Auburn's* in that they also "naturally flow" from the collusion. However, in *City of Auburn* we focused on the fact that Mavis' time spent in preparing a bid would not have been wasted but for the collusion prior to the bidding. Here, unlike Mavis, Thompson did not even expend the effort to prepare a bid.

Accordingly, we conclude that Thompson cannot establish that, but for the alleged violation of the antitrust statute, he would have been the successful bidder. As it is clear that Thompson cannot prove one of the three essential elements required to establish an antitrust violation, we do not need to review the other two elements. *See id.* at 585. Accordingly, we affirm the trial court's grant of Famco's Motion to Dismiss.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted Vigo County's Motion to Dismiss because Count I of Thompson's Complaint should be certified as a public lawsuit, subject to the provisions of the Public Lawsuit Statute; and the trial court properly granted Famco's and Gibson's Motion to Dismiss because Count II of Thompson's Complaint cannot be sustained under the statutory antitrust violations.

Affirmed.

FRIEDLANDER, J., and SHARPNACK, J., concur.