# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**CRYSTAL FRANCIS**
**TRACY PAPPAS**
**CARRIE LYNN**
Indianapolis, Indiana

ATTORNEYS FOR THE STATE
OF INDIANA AS *AMICUS CURIAE*
IN SUPPORT OF NEITHER PARTY:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**THOMAS M. FISHER**
Solicitor General of Indiana
Indianapolis, Indiana

**ELIZABETH A. MURPHY**
Indiana Bureau of Motor Vehicles
Indianapolis, Indiana

**FILED**
Dec 05 2012, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE NAME CHANGE OF JOHN WILLIAM RESNOVER, | ) ) ) | |
| Appellant-Petitioner, | ) ) | |
| And | ) ) | No. 49A02-1205-MI-364 |
| IN RE THE NAME CHANGE OF JOHN ARTHUR HERRON, | ) ) ) ) | |
| Appellant-Petitioner. | ) | |

APPEAL FROM THE MARION CIRCUIT COURT
The Honorable Louis F. Rosenberg, Judge
Cause No. 49C01-1110-MI-40823 & 49C01-1112-MI-47009

**December 5, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

In this consolidated case, Appellant-Petitioner, William Resnover (Resnover) and Appellant-Petitioner, John Arthur Herron (Herron), appeal the trial court's denial of their petitions to change their names.

We reverse and remand for further proceedings.

## ISSUE

Resnover and Herron raise two issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court erred when it required a valid driver's license or valid state identification card as a prerequisite to grant the petition for name change pursuant to Ind. Code chapter 34-28-2.

## FACTS AND PROCEDURAL HISTORY

Both appellants in this consolidated case cannot obtain a valid Indiana driver's license due to discrepancies between the names commonly used in their everyday lives and the names listed on their birth certificates.

### I. *Resnover*

Resnover was born on February 13, 1936 in Nashville, Tennessee, and is seventy-six years old. He was born to his mother, Johnnie Mae Cheatham, and his birth certificate lists his name as John Willie Cheatham. No father's name is listed. Throughout his life, Resnover believed his name to be John William Resnover. In the past, state and federal agencies issued identification documents to him in that name, including an Indiana driver's license, a social security card, and a pension.

2

On February 14, 2008, Resnover's driver's license expired. When he attempted to renew it some years later, the Bureau of Motor Vehicles (BMV) required him to present a birth certificate in compliance with State laws implementing federal real ID standards, 49 U.S.C. § 30301 *et seq.* Upon the receipt of his birth certificate, he discovered that the name he had been using during his entire life was different from the one listed on his birth certificate. Because his birth certificate listed his name as John Willie Cheatham, the BMV refused to issue him a current driver's license or identification card.

On October 21, 2011, Resnover filed a petition to change his name in accordance with Ind. Code ch. 34-28-2 *et seq*. On February 6, 2012, the trial court conducted a hearing on Resnover's petition. On April 4, 2012, the trial court denied the petition because " without a valid Indiana driver's license or Indiana identification card, a petitioner who is at least 17 years of age is unable to obtain a change of name in Indiana." (Appellant's App. p. 4).

## II. *Herron*

Herron was born on March 27, 1940 in Indianapolis, Indiana, and is seventy-two years of age. His birth certificate lists his name as "Infant Male Payne." (Herron's App. p. 12). His parents names are John and Margaret Payne. However, according to Herron, his parents were never married and he believes Payne was his mother's maiden name, while his father's last name was Herron. Herron's siblings carry the name Herron. Throughout his life, Herron has consistently used John Arthur Herron as his legal name. He attended school under that name, obtained a social security card, and a selective

3

service card identifying him as Herron. He never applied for a driver's license or passport. Herron has a criminal record and was incarcerated under the name Herron.

Herron has been diagnosed with liver cancer and his course of treatment includes radiation or chemotherapy. In 2011, he received a limited monthly income consisting of social security benefits in the amount of $776 and must rely on Medicaid to pay his treatment. Because Herron believed that he could not apply for Medicaid without a birth certificate that confirmed his name and because the application of certain public services requires a valid means of identification,[1] Herron filed a petition for change of name on December 12, 2011. On March 5, 2012, the trial court conducted a hearing on Herron's petition. On March 9, 2012, Herron filed a request to stay the ruling on his petition as well as a petition to establish a public record of time and place of birth pursuant to Ind. Code ch. 34-28-1 as an alternative to Ind. Code ch. 34-28-2 *et seq*. On April 10, 2012, the trial court denied Herron's petition to change his name due to his failure to provide the court with a valid driver's license or Indiana issued identification card. At the same time, the trial court denied Herron's petition to establish a public record of the time and place of birth.

Both Resnover and Herron appealed. On June 18, 2012, we consolidated their appeals. On August 2, 2012, the State of Indiana filed as *Amicus Curiae* in support of neither party.

Additional facts will be provided as necessary.

---

[1] Herron is now receiving Medicaid as he was found eligible despite his inability to provide a birth certificate matching his name.

DISCUSSION AND DECISION

I. *Standard of Review*

When the trial court enters findings *sua sponte*, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Brinkmann v. Brinkmann*, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. *Hanson v. Spolnik*, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), *trans. denied*. A finding is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. at 76-77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. at 77. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings. *Id*.

II. *Petition for Change of Name*

"The purpose of a name is to identify the person." *Schofield v. Jennings*, 68 Ind. 232, 234 (1879). It has long been the standing law of our state that:

> By the common law, . . ., a full name consists of one Christian or given name, and one surname or patronymic. The two, using the Christian name first and the surname last, constitute the legal name of the person. . . . No person is bound to accept his patronymic as a surname, nor his Christian name as a given name, though the custom to do so is almost universal amongst English-speaking people, who have inherited the common law. A person may be known by any name in which he may contract, and in such name he may sue and be sued, and by such name may be criminally punished.

*Id.* at 234-35. Under common law, a person may lawfully change his or her name without resort to any legal proceedings where it does not interfere with the rights of

5

others and is not done for a fraudulent purpose. *Leone v. Commissioner*, 933 N.E.2d 1244, 1252 (Ind. 2010). A person effects a common-law change of name by usage or habit. *Id.* Therefore, the very nature of the name change means that it can be effected without court approval. Such a system includes both the advantages of great flexibility and the disadvantage of the difficulty in verifying a name change, especially when the change occurs outside the traditional times in life, such as adoption, marriage, or divorce. *Id.*

In 1852, the Legislature instituted a new procedure for "an orderly record of the change of name in order to avoid future confusion." 2 R.S. 1852, Ch. VII §§ I-V (Gavin and Hords, eds., 1862 ed.). In analyzing whether this legislative enactment of a common law practice signaled the abrogation of the common law, our supreme court decided in *In re Hauptly*, 312 N.E.2d 857, 859 (Ind. 1974) that Indiana courts must grant a name change where no evidence of fraud exists but this does not mean that the State must recognize an informal common law name change. Thus, only after a court grants this imprimatur to the name change must a state agency recognize it. *Leone*, 933 N.E.2d at 1253. In other words, "under the common law only a statutorily authorized court order gives legal sanction to a name change." *Id.* at 1254.

While the courts have unique power to certify a name change, Hoosiers still may refer to themselves by any name they like. *Id.* They may not, however, demand that government agencies begin using their new names without a court order. *Id.* This dual structure recognizes the reality that names serve multiple purposes, both private and public. *Id.* As our supreme court pointed out in *Leone*:

> The modern tendency toward use of government-issued identification in both private and public settings may shrink the field governed by the common law, but both common law and statutory processes have long coexisted with respect to names, as they do in other fields of law. Statutes obliging citizens to engage in some formality when they invoke government processes by applying for benefits or identification cards neither obliterate common law usage nor are they driven by them.

*Id*. at 1255.

For both Resnover and Herron—and no doubt numerous others similarly situated—common law usage and Legislative enactment have reached a collision point once again. In 2010, the Indiana General Assembly issued Public Law 61 amending the procedures to effect a legal name change. The amendment imposed additional requirements purported to "help reduce the amount of identity theft from people who create new identities. It also would make is [sic] more difficult for illegal immigrants to create new identities, since the documentation to prove a person's current identity would be much stricter." (Press Release, Democratic Caucus, Cheatham Outlines Agenda for 2010 Legislative Session (Dec. 9, 2009)). Currently, the procedure to effect a name change involves the filing of a petition with the trial court:

> **Filing petition; procedure for change of name of minor**
> Sec. 2. (a) The petition described in section 1 of this chapter must:
> (1) *if applicable*, include the information required by section 2.5 of this chapter;
> (2) in the case of a petition filed by a person described in section 2.5 of this chapter, be subscribed and sworn to (or affirmed):
> >    (A) under the penalties of perjury; and
> >    (B) before a notary public or other person authorized to administer oaths; and
> (3) be filed with the circuit court of the county in which the person resides.
>
> (b) In the case of a parent or guardian who wishes to change the name of a minor child, the petition must be verified, and it must state in detail the

reason the change is requested. In addition, except where a person's consent is not required under [I.C. §] 31-19-9, the written consent of a parent, or the written consent of the guardian if both parents are dead, must be filed with the petition.

(c) before a minor child's name may be changed, the parents or guardian of the child must be served with a copy of the petition as required by the Indiana trial rules.

I.C. § 34-28-2-2 (emphasis added). The information which must be included in the petition is detailed in subsection 2.5 and specifies:

**Contents of petition**
Sec. 2.5. (a) if a person petitioning for a change of name under this chapter is at least seventeen (17) years of age, the person's petition must include at least the following information:
(1) The person's date of birth.
(2) The person's current address; and
    (A) residence address; and
    (B) if different than the person's residence address, mailing address.
(3) The person's valid:
    (A) Indiana driver's license number; or
    (B) Indiana identification card (as described in [I.C. ch.] 9-24-16) number.
(4) A list of all previous names used by the person.
(5) Proof that the person is a United States citizen.
(6) A statement concerning whether the person holds a valid United States passport.
(7) A description of all judgments of criminal conviction of a felony under the laws of any state or the United States that have been entered against the person.

I.C. § 34-28-2-2.5(a).

Thus, Indiana Code section 34-28-2-2 is divided into three main parts: part (a) relates to the filing procedure and contents for the petition to change a name; whereas parts (b) and (c) provide guidelines for the name change of a minor child—which are not applicable to the case before us. The third part of the name change procedure is enacted

8

in subsection 2.5, which details the supporting information required to effect a name change, and which mandates, among other, the petitioner's "Indiana driver's license number or Indiana identification card [] number." *See* I.C. § 34-28-2-2.5(a)(3).

When Resnover and Herron presented themselves at the BMV requesting, respectively, a driver's license and an identification card in their common law names, they were turned down because the birth certificates used to prove their identities indicated a different legal name.[2] Pursuant to BMV procedure, if the name on the document is different, the applicant must supply documentary proof of a name change, such as a marriage license or court order. *See* Ind. Admin. Code 7-1.1-3(b)(1)(K). After petitioning the court to change their legal names to coincide with their common law names, the trial court rejected Resnover's and Herron's petitions because they failed to submit "a valid Indiana driver's license or Indiana identification card," citing I.C. § 34-28-2-2.5. (Resnover's App p. 4; Herron's App. p. 5).

As such, both Resnover and Herron are in a dilemma. Unable to change their birth certificates to their common law names means that they are unable to prove their identities to receive a driver's license or identification card. Without a valid driver's license or identity card even the most basic daily tasks present an insurmountable burden: they cannot purchase certain over-the-counter allergy medicine that contains ephedrine or pseudoephedrine, purchase alcohol or tobacco, they cannot enter federal facilities or

---

[2] Pursuant to 140 Ind. Admin. Code 7-1.1-3(a), to obtain an Indiana driver's license or identification card, an applicant must submit documents to the BMV to prove his identity, lawful status in the United States, Indiana residency, and his social security number. An applicant's identity can be established by an unexpired U.S. passport or passport card or by a certified birth certificate, and if applicable a certified amended birth certificate showing a change in name, date of birth, or gender. *See* 140 Admin. Code 7-1.1-3(b)(1)(A)-(B).

9

board a commercial airplane, and cannot receive free assistance with their income taxes. In order to provide a solution to this conundrum, we have to interpret Indiana Code section 34-28-2-2.5.

The interpretation of a statute is a legal question that is reviewed *de novo*. *Sun Life Assur. Co. of Canada v. Ind. Dept. of Ins*., 868 N.E.2d 50, 55 (Ind. Ct. App. 2007), *trans. denied*. Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id*. The first and often the last step in interpreting a statute is to examine the language of the statute. *Id*. When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id*. We review the statute as a whole and presume the legislature intended a logical application of the language used in the statute, as to avoid unjust or absurd results. *New Albany Historic Preservation Comm'n v. Bradford Realty, Inc*., 965 N.E.2d 79, 88 (Ind. Ct. App. 2012).

In its *Amicus Curiae* Brief, the State suggests that the plain wording of the statute merely requires a valid license *number* or identification *number* to support a petition for name change, not an actual license or identification *card*. We agree. Indiana Code section 34-28-2-2.5(a)(3) stipulates the inclusion in the petition for name change of "a valid Indiana driver's license *number* or Indiana identification card *number*." By requiring a valid driver's license *card* or identification *card*, the trial court read into the statute a non-existing prerequisite that imposed an impermissibly high burden on Resnover and Herron.

An identification card number is the "[u]nique identification number" that must be written on the front of an identification card issued under Indiana Code section 9-24-16-3(b)(5). Similarly, a driver's license number is the "unique identifying number of the permit or license[.]" I.C. § 9-24-11-5(a)(7). Each number is exclusively associated with the individual to whom it was issued to and does not cease to be valid simply because the card itself has expired or is suspended. Once the number is assigned by the BMV to an individual, the number becomes associated with that person and remains valid for purposes of identification.

The practice of using a driver's license number as identifying information is commonplace in Indiana's statutes. *See*, *e.g.*, I.C. § 3-7-13-13(a) (upon registering to vote, an individual must provide a driver's license number); I.C. § 31-16-6-9(a)(1)(E) (parents must furnish their driver's license numbers when modifying a child support order). Moreover, in *Laker v. State*, 869 N.E.2d 1216, 1219 (Ind. Ct. App. 2007), we accepted the driver's license number as "identifying information" leading to the establishment of the driver's identity.

Recently, the United States District Court for the Southern District of Indiana in a factually similar case interpreted the statute to require that petitioner only provide a valid license number or identification card number. *Worley v. Waddell*, 2012 WL 4794654 (S.D. Ind. 2012). In *Worley*, the petitioner asserted federal due process arguments when the BMV refused to issue him an identification card in his common law name. *Id*. at 1. In discussing whether a state law remedy was available or was inadequate as part of

11

Worley's procedural due process claim, the district court explicitly took judicial notice of the proceedings in this consolidated case. *Id.* at 4.

### A. *Resnover*

Interpreting the statute as we do today—requiring the submission of a driver's license *number* or identity card *number*—will solve the dilemma Resnover found himself in. More importantly, during the court proceedings, Resnover had already presented the trial court with a copy of his expired driver's license, which included his unique license number.

### B. *Herron*

Although the State in its *Amicus Curiae* brief indicates that the record is ambivalent as to whether Herron had ever received a driver's license or identification card, the trial court, in its Order, noted that Herron "never had an Indiana driving license or an identification card issued by the BMV." (Herron's App. p. 4). During the proceedings, Herron testified that the only identification he had was a social security card and an identification issued by the Department of Correction, both of which were lost when his billfold was stolen. Because Herron never applied for an Indiana driver's license or identification card, he was never assigned a number that must be included in the petition when requesting the trial court for a change of name. Therefore, he will never be able to amend the name on his birth certificate, a mandatory prerequisite to establish the identity requirement for receiving an Indiana driver's license or identification card.

12

To avoid the rigid requirements of I.C. § 34-28-2-2.5, Herron suggests that we interpret the statute in conjunction with its preceding section 2, which reads, in pertinent part,

**Filing petition; procedure for change of name of minor**
Sec. 2. (a) The petition described in section 1 of this chapter must:
(1) *if applicable*, include the information required by section 2.5 of this chapter;

I.C. § 34-28-2-2 (emphasis added). Seizing on the "if applicable" language of I.C. § 34-28-2-2, Herron asserts that this language should be implicitly read in conjunction with I.C. § 34-28-2-2.5, which is a subpart of I.C. § 34-28-2-2. As such, he maintains that a petitioner, who is at least seventeen years of age, should only have to include his driver's license number or identification card number with his petition for name change, *if it is applicable*. The State, as *Amicus*, opposes this interpretation, contending that it would "gut the statute and improperly make the requirements of subsection 2.5 merely discretionary." (*Amicus* Br. p. 9).

The interrelationship between Indiana Code section 34-28-2-2 and its subsection 2.5, indicates that when filing a petition for name change, the petitioner must "if applicable, include the information required by section 2.5 of this chapter." *See* I.C.§ 34-28-2-2. Mindful to give all words included in the statute their plain and ordinary meaning, we cannot but interpret the "if applicable" language to indicate that if the required documentation enumerated in subsection 2.5 cannot be submitted to the court, the petitioner is relieved from the necessity to produce the documents. Construing the statute otherwise would negate the "if applicable" language in I.C. § 34-28-2-2.

13

Although Section 2.5 propones the mandatory language that the petition "shall" include these documents, we are mindful that "[w]hen the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it appears clear from the context or the purpose of the statute that the legislature intended a different meaning." *United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.*, 549 N.E.2d 1019, 1022 (Ind. 1990). This is one of the rare instances where the Legislature intended a directory language. If we were to follow *Amicus'* suggestion and mandate a driver's license number or identification card number, it raises the question how a petitioner older than seventeen, having never received a driver's license or identity card will be able to get his or her name changed on a birth certificate.[3]

In sum, today we hold that to effect a name change, a petitioner must submit with the petition for a name change the documents requested in I.C. § 34-28-2-2.5—including a driver's license *number* or identification card *number*—if applicable. To be sure, although we have decided that the language of subsection 2.5 does not carry a mandate, but rather a directory intent, the trial court is still obliged to discern the absence of a fraudulent purpose prior to granting a petitioner's name change. We remand this

---

[3] The State, as *Amicus*, proposes a potential solution for individuals similarly situated to Resnover and Herron by suggesting that they are not barred from obtaining state-issued identification, but only state-issued identification in their name of choice. The State recommends that Resnover obtains secondary documents in the name listed on his birth certificate—Cheatham—that would allow him to obtain a driver's license, also in the name of Cheatham. Resnover could then use this license to seek a name change to Resnover. If granted, Resnover could then change all of his identification documents back to his original common law name. While this procedure is feasible, the State's proposal is flawed. First, Herron's birth certificate reads "Infant Male"—surely, the State cannot advise Herron to seek documentation using his birth certificate's name. Second, Indiana law has long recognized that an individual can change his name absent a fraudulent purpose. Clearly, the State's suggested method could be construed as perpetuating fraud if individuals are encouraged to obtain identification documents in names that they have never used.

14

consolidated case to the trial court for further proceedings in accordance with this holding.[4]

<u>CONCLUSION</u>

Based on the foregoing, we hold that the trial court trial court erred when it required a valid driver's license or valid state identification card as a prerequisite to grant the petition for name change pursuant to Ind. Code chapter 34-28-2.

Reversed and remanded for further proceedings.

BAILEY, J. concurs

CRONE, J. concurs in part and dissents in part with separate opinion

---

[4] Because we decide this consolidated case on statutory grounds, we do not need to reach Appellants' constitutional challenge to their right to vote. *See Ind. Wholsesale Wine & Liquor Co., Ins. v. State ex rel. Ind. Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 107 (Ind. 1998).

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE NAME CHANGE OF )
JOHN WILLIAM RESNOVER, )
           )
       Appellant-Petitioner, )
           )
       And )       No. 49A02-1205-MI-364
           )
IN RE THE NAME CHANGE OF )
JOHN ARTHUR HERRON, )
           )
       Appellant-Petitioner. )

**CRONE, Judge, concurring in part and dissenting in part**

I concur in the majority's disposition of Resnover's appeal. Indiana Code Section 34-28-2-2.5(a)(3) requires only a valid Indiana driver's license *number* or Indiana identification card *number*, the former of which Resnover apparently has and thus may use to petition for a name change.

As for Herron, I respectfully disagree with the majority's interpretation of "if applicable" in Indiana Code Section 34-28-2-2(a)(1) and therefore disagree with its conclusion that Herron is "relieved from the necessity to produce the documents" specified in Indiana Code Section 34-28-2-2.5. Slip op. at 13. Like the State, I believe

16

that this interpretation "gut[s] the statute and improperly make[s] the requirements of subsection 2.5 merely discretionary." Amicus Br. at 9.

"Statutes relating to the same general subject matter 'are in *pari materia* [on the same subject] and should be construed together so as to produce a harmonious statutory scheme.'" *Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009) (quoting *Sanders v. State*, 466 N.E.2d 424, 428 (Ind. 1984)). "The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result." *Bd. of Comm'rs of Hendricks Cnty. v. Town of Plainfield*, 909 N.E.2d 480, 489-90 (Ind. Ct. App. 2009). In my view, a plain reading of both statutes indicates that the "if applicable" in Indiana Code Section 34-28-2-2(a) refers to the age requirement of Indiana Code Section 34-28-2-2.5(a) and not to the information required by that statute. In other words, if a person petitioning for a name change is at least seventeen years of age, then Indiana Code Section 34-28-2-2.5 *is* applicable, and therefore the petition "must" include *all* of the information required by that statute pursuant to both Indiana Code Section 34-28-2-2(a) and Indiana Code Section 34-28-2-2.5(a). And, absent any legislative indication to the contrary, "must" means "must."[5]

According to Indiana Code Section 34-28-2-2.5(a)(3), a petition for name change "must" include the person's valid Indiana driver's license number or Indiana identification card number.[6] I respectfully disagree with the majority's unsupported

---

[5] The majority uses the word "shall," which does not appear in either statute.

[6] If Herron once had an Indiana identification card, as his equivocal testimony suggests, and if the number on that card was valid, then he could satisfy Indiana Code Section 34-28-2-2.5(a)(3).

assertion that Herron "will never be able to amend the name on his birth certificate, a mandatory prerequisite to establish the identity for receiving an Indiana driver's license or identification card." Slip op. at 12. The State suggests (and Herron himself does not deny) that he could use his birth certificate "to obtain legitimate documentation of residency and address" and correct the name on his social security card to reflect his birth certificate name (which, although unusual, is not alleged to be legally deficient in any way). Amicus Br. at 16. He could then use those documents to obtain an Indiana driver's license or identification card bearing his birth certificate name and petition for a name change. If the petition is granted, he could obtain new official documents bearing his familiar name. Herron's suggestion that this procedure would unduly burden any of his constitutional rights is unsupported by relevant legal authority and therefore unconvincing. In sum, then, I would affirm the denial of Herron's petition for name change.