K.T.P. by next friend A.S.P.[1] and State of Indiana, Appellants–Petitioners,

v.

Travis E. ATCHISON, Appellee–Respondent.

No. 47A04–0510–JV–604.

Court of Appeals of Indiana.

May 24, 2006.

---

1. The State of Indiana represents its interests as a Petitioner in that A.S.P. is a Title IV–D recipient of benefits.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, for Appellant.

Nick J. Herthel, Herthel & Herthel, Bedford, for Appellee.

## OPINION

SULLIVAN, Judge.

Petitioner, the State of Indiana, sought reimbursement from Respondent, Travis Atchison, for fifty percent of certain medical expenses incurred by Atchison's son, K.T.P.[2] Following an April 22, 2005 hearing, the trial court concluded on August 22, 2005 that some of the expenses at issue did not qualify as "birthing expenses" and thus denied the State the full reimbursement it requested. Upon appeal, the State argues that the trial court erred in concluding that the disputed medical expenses were not "birthing expenses."

We affirm.

K.T.P. was born on June 27, 2003, to A.S.P. A.S.P. was a Medicaid recipient at the time.[3] K.T.P.'s birth, according to A.S.P., was considered "normal," and she was sent home after three days in the hospital. On July 14, 2003, K.T.P. was taken to the hospital for a routine checkup. There is no evidence that K.T.P. exhibited health problems during this checkup. On July 31, 2003, K.T.P. "just got sick." Tr. at 13. He was taken to a hospital and subsequently airlifted to another hospital due to a viral infection which A.S.P. testified attacked K.T.P.'s liver. K.T.P. was hospitalized for a week, from July 31 to August 5, 2003, due to this infection. Medicaid covered the expenses for K.T.P.'s birth and subsequent hospitalization.[4]

On October 9, 2003, the State filed a petition to establish paternity. On November 1, 2004, in an order establishing paternity and child support, the court found that Atchison admitted paternity and established Atchison as the biological father of K.T.P. In its order the court provided for custody, visitation, child support, and past due child support, among other things. The court provided for birthing expenses by stating, "The father shall reimburse the State of Indiana 50% of the birthing expenses paid by Medicaid." App. at 14. Atchison testified that he agreed to this reimbursement provision with the understanding that it covered the expenses "up until the time of the actual birth," and nothing more. Tr. at 27. The court also ordered Atchison and A.S.P. to obtain and maintain health insurance for K.T.P., "when available at a reasonable cost," with A.S.P. paying the first $283.92 per year of doctor, dental, hospital, optometric, and prescription drug expenses not otherwise covered by insurance. App. at 14. The court further ordered that the balance of such expenses not otherwise paid by insurance was to be paid fifty-seven percent by Atchison and forty-three percent by A.S.P. The court made no pro-

---

2. Following a stipulation by Atchison and K.T.P.'s mother, part of the trial court's order included a provision that K.T.P.'s surname be changed.

3. The record does not indicate the means by which A.S.P. qualified for Medicaid.

4. As part of its petition for "birthing expenses," the State also seeks reimbursement from Atchison for additional costs paid by Medicaid, including costs for K.T.P.'s vaccines, which were incurred on dates up to and including August 27, 2003.

vision for past medical expenses not qualifying as "birthing expenses."

On January 24, 2005 [5] the State filed a motion to set a hearing regarding birthing expenses. In its motion the State sought $9639.19 from Atchison, which was fifty percent of the Medicaid bill for both A.S.P. and K.T.P., totaling $19,278.38.[6] Atchison filed a petition in response, objecting to the expenses claimed by the State and arguing that some of the "birthing expenses" sought were actually "newborn expenses" incurred months after K.T.P.'s birth.

Following an April 22, 2005 hearing, the court ordered Atchison to pay one half of the $3448.92 incurred by A.S.P. in prenatal and birthing expenses, or $1724.46, which Atchison agreed he owed. The court also ordered Atchison to pay one half of the $1066.11 birthing and delivery expenses for K.T.P., or $533.06, incurred through July 14, 2003, which Atchison also agreed he owed. The court did not, however, order Atchison to pay one half of the $14,758.44 in expenses for K.T.P. incurred July 31, 2003 and following that date. The court found that "birthing expenses" as defined by Indiana Code § 31–14–17–1 (Burns Code Ed. Repl.2003) did not include any expenses which did not result directly from the act of parturition.[7] Because the testimony indicated that K.T.P. exhibited no health problems during a routine check-up seventeen days after birth, and that K.T.P. "just got sick" thirty-four days following his birth, the court determined there was no medical evidence that the $14,758.44 were expenses attendant to the birth of K.T.P. or resulting from his birth.[8] Tr. at 13. The court therefore denied the State's claim for reimbursement for the expenses incurred by K.T.P. on July 31, 2003 and thereafter as listed on State's Exhibit 1.

Under Indiana Code § 31–14–17–1, a court in a paternity action must order a father to pay for at least fifty percent of the expenses of pregnancy and childbirth. The State claims upon appeal that because Atchison was ordered to "reimburse the State of Indiana 50% of the birthing expenses paid by Medicaid," he is therefore required to pay one half of the $14,758.44 in expenses paid by Medicaid which K.T.P. incurred on July 31 and thereafter as billed in State's Exhibit 1. App. at 14.

The State argues that Atchison must pay the disputed expenses because those expenses qualify as "postpartum" expenses paid by Medicaid, and Medicaid provides for "postpartum" assistance up to sixty days following childbirth. In making this argument, the State refers to Indiana Code § 12–15–2–13 (Burns Code Ed. Repl. 2001) and 42 U.S.C. § 1396(a)(e)(5) (2003), which state that a woman who has qualified for Medicaid during her pregnancy continues to remain qualified for "postpar-

---

5. The filing date is not legible on the petition, but the parties agree to this date.

6. It appears the total expenses for A.S.P. and K.T.P. total $19,278.37, which is the sum of A.S.P.'s expenses paid by Medicaid totaling $3448.92 and K.T.P.'s expenses paid by Medicaid totaling $15,829.45. We further note that the Medicaid bill indicates K.T.P. incurred $15,824.55 in expenses, but that Medicaid paid $15,829.45 for these expenses, which was $4.90 over the amount charged.

7. "Parturition" is defined as "the action or process of giving birth to offspring." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 904 (11th ed.2004).

8. The court based its reasoning upon *Gaffney v. Saba*, 6 Conn.Cir.Ct. 22, 262 A.2d 617 (1969), in which the court, interpreting a Connecticut statute requiring a father to pay the "lying-in" expenses of his child, determined those expenses did not extend beyond the "period of the sickness consequentially resulting from the act of parturition."

tum"[9] medical assistance for a sixty-day period following her pregnancy.

Title XIX of the Social Security Act, popularly called "Medicaid," was enacted by the United States Congress in the Social Security Amendments of 1965, Pub.L. No. 89–97. *Legacy Healthcare, Inc. v. Barnes & Thornburg,* 837 N.E.2d 619, 622 (Ind.Ct.App.2005), *trans. pending.* The Medicaid statutes create a comprehensive cooperative federal-state program for medical care under which participating states are federally financed for their medical assistance programs if they submit a state plan which comports with federal requirements. *Id.* Although state participation in Medicaid is voluntary, if a state chooses to participate, it must comply with the federal statutes and regulations governing the program. *Id.*

▮ Statutory interpretation is a matter of law determined de novo by this court. *C.A.M. ex rel. Robles v. Miner,* 835 N.E.2d 602, 606 (Ind.Ct.App.2005). We will construe and interpret a statute only if it is ambiguous. *Id.* A statute which is clear and unambiguous must be read to mean what it plainly expresses, and its plain and obvious meaning will not be enlarged or restricted. *Id.* The words and phrases of such a statute will be taken in their plain, ordinary, and usual sense. *Id.*

▮ Implicit in the State's argument is the assumption that 42 U.S.C. § 1396(a)(e)(5), which provides for "postpartum" medical assistance, provides for K.T.P.'s medical care as well as A.S.P.'s. The State offers no authority for this assumption. Section 1396(a)(e)(5) states,

"A woman who, while pregnant, is eligible for, has applied for, and has received medical assistance under the State plan, shall continue to be eligible under the plan, as though she were pregnant, for all pregnancy-related and postpartum medical assistance under the plan, through the end of the month in which the 60–day period (beginning on the last day of her pregnancy) ends."

Contrary to the State's position, it appears that under its plain language, § 1396(a)(e)(5) relates only to the care of the woman, not to the care of the child. Indeed, it is the immediately preceding subsection which appears to address the eligibility of the child to receive medical assistance. Section 1396(a)(e)(4) (2003) states in pertinent part,

"A child born to a woman eligible for and receiving medical assistance under a State plan on the date of the child's birth shall be deemed to have applied for medical assistance and to have been found eligible for such assistance under such plan on the date of such birth and to remain eligible for such assistance for a period of one year so long as the child is a member of the woman's household and the woman remains (or would remain if pregnant) eligible for such assistance."

Given these separate and differing provisions, which provide for a sixty-day window following childbirth for the woman's medical assistance and a one-year window for her child, we are not inclined to read "postpartum" care, as referred to in subsection (5) regarding the care of the woman, as also encompassing the care of her child, who is covered by subsection (4).

Indiana Code § 12–15–2–13(d) similarly provides for Medicaid coverage for a pregnant woman during pregnancy and for sixty days following childbirth:

---

**9.** "Postpartum" is defined as "occurring in or being the period following parturition." "Postnatal" is defined as "occurring or being after birth; *specif:* of or relating to an infant immediately after birth." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 970 (11th ed.2004).

" Medicaid is available to a pregnant woman described in this section for the duration of the pregnancy and for the sixty (60) day postpartum period that begins on the last day of the pregnancy, without regard to any change in income of the family of which she is a member during that time."

The plain language of this provision indicates that it applies to the pregnant woman only. Sections 12–15–2–12 (Burns Code Ed. Repl.2001) ("Qualified child") and 12–15–2–14 (Burns Code Ed. Repl. 2001) ("Eligibility of children—Application of resource standard") treat the child separately. Given the facts that the federal Medicaid statutes provide for the woman and for the child separately, that the State's plan has its basis in the federal statutes, and that the State statutes also treat the woman separately from the child, we are also disinclined to interpret "postpartum" care as referred to in Indiana Code § 12–15–2–13 as applying to the child as well as the mother.

We are therefore unpersuaded by the State's reasoning, in claiming Atchison is responsible for K.T.P.'s medical expenses on and after July 31, 2003, that these expenses qualified as "postpartum" care as contemplated by U.S.C. § 1396(a)(e)(5) and Indiana Code § 12–15–2–13 and must therefore qualify as the "birthing expenses," a portion of which Atchison was ordered to pay.

This is not to say that K.T.P. was not eligible for Medicaid in his own capacity. But not all expenses paid by Medicaid for a child qualify as childbirth expenses. To be sure, 42 U.S.C. § 1396(a)(e)(4) provides for a child to remain qualified for Medicaid coverage up to a year following birth merely by virtue of the child's being born to a Medicaid-eligible woman. There is no proviso in § 1396(a)(e)(4) that the expenses be related to problems relating to childbirth, and as a matter of common sense, not all medical issues arising up to a year following birth are necessarily birth-related.

■ We have determined that the fact of K.T.P.'s Medicaid coverage does not compel a finding that the disputed expenses were birthing expenses. The question we must therefore address is whether K.T.P.'s medical expenses, which were incurred thirty-four days following his birth, and which were reportedly due to a viral infection affecting his liver, qualify as expenses of childbirth as contemplated by Indiana Code § 31–14–17–1, half of which may be charged to Atchison.

Indiana Code § 31–14–17–1 states the following:

"The court shall order the father to pay at least fifty percent (50%) of the reasonable and necessary expenses of the mother's pregnancy and childbirth, including the cost of:

(1) prenatal care;

(2) delivery;

(3) hospitalization; and

(4) postnatal care."

As K.T.P.'s disputed medical expenses arose four weeks following his reportedly "normal" birth, the State's position requires that we include them as "postnatal care" under Indiana Code § 31–14–17–1. As stated earlier, "postnatal" is defined as "occurring or being after birth; *specif:* of or relating to an infant immediately after birth." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, *supra.* Under the plain language of the statute, "postnatal care," which refers to the care of an infant immediately following birth, would not apply to the subsequent care of a child who is rehospitalized thirty-four days following a normal delivery. This is especially so considering that the only named individual covered by the statute is the mother. No mention is made of the child, who certainly by four weeks would qualify as a separate individual.

Further supporting our interpretation, we note that the legislature provides, in a different statute and in a different manner, for the medical expenses of the child in a paternity action. In contrast with Indiana Code § 31–14–17–1, which mandates that the father pay at least fifty percent of the mother's pregnancy and childbirth expenses, Indiana Code § 31–14–11–3 (Burns Code Ed. Repl.2003) grants the court discretion to determine an appropriate amount of support for the child's medical expenses, including medical insurance. Indeed, in this case, the court ordered Atchison to pay the mandated minimum fifty percent of the birthing expenses, and, in a separate provision, to obtain health insurance for K.T.P. and pay fifty-seven percent of K.T.P.'s medical expenses not covered by insurance. Although the court apparently failed to provide for K.T.P.'s past medical expenses not relating to his birth, we are not inclined to construe the disputed expenses as "birthing expenses" for purposes of making Atchison liable for them, as under both the Indiana Code and the court's paternity order, medical expenses and birthing expenses are clearly separate and distinct.

Although there is little precedent regarding the interpretation of Indiana Code § 31–14–17–1, previous cases in which this statute or its predecessor have been cited support our conclusion that the costs it covers are generally those incurred by the mother. *In re the Paternity of A.J.R.,* 702 N.E.2d 355, 363 (Ind.Ct.App.1998), our court cited Indiana Code § 31–14–17–1 with reference to costs which "Mother incurred in connection with Daughter's birth." Similarly, in *St. Mary's Medical Center, Inc. v. Bromm,* 661 N.E.2d 836,

838 n. 3 (Ind.Ct.App.1996), *trans. denied,* we noted that a father who was required to pay his daughter's prenatal and childbirth expenses following the daughter's pregnancy could seek partial reimbursement for those prenatal and childbirth expenses from the putative father of his daughter's child under former Indiana Code § 31–6–6.1–17 (Burns Code Ed. Supp.1995), the predecessor to Indiana Code § 31–14–17–1.[10]

Having concluded that K.T.P.'s medical expenses incurred on and after July 31, 2003 do not qualify as "birthing expenses" under Indiana Code § 31–14–17–1, we affirm the trial court's order denying the State's claim against Atchison for reimbursement of half of the $14,758.44 in medical expenses paid by Medicaid for K.T.P.

The decision of the trial court is affirmed.

KIRSCH, C.J., and DARDEN, J., concur.

10. Of course, because the father in *Bromm* was not required to pay any of his daughter's child's medical expenses, our court would not have ordered that he seek reimbursement for them. This case merely illustrates another instance in which "childbirth" expenses apply to the expenses of the mother.