876 N.E.2d 1161 (2007)
In the Matter of the PATERNITY OF A.R.S.A.
Alberto S. Meneses, Appellant-Father,
v.
Rudit A. Legunes, Appellee-Mother.
No. 79A04-0706-JV-323.
Court of Appeals of Indiana.
November 30, 2007.
*1163 Timothy P. Broden, Lafayette, IN, for Appellant.
Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, for Appellee.

OPINION
RILEY, Judge.

STATEMENT OF THE CASE
Appellant-Father, Alberto S. Meneses (Meneses), appeals the trial court's judgment ordering him to reimburse Medicaid for fifty percent of the birthing expenses incurred during the birth of his son, A.A.
We affirm.

ISSUES
Meneses raises two issues on appeal, which we restate as the following three issues:
(1) Whether the trial court erred when it ordered him to reimburse Medicaid for fifty percent of the medical expenses incurred during the birth of his son, pursuant to Ind.Code § 31-14-17-1;
(2) Whether I.C. § 31-14-17-1 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and
(3) Whether I.C. § 31-14-17-1 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

FACTS AND PROCEDURAL HISTORY
On December 16, 2004, Rudit Maria Amaro Legunes (Legunes) gave birth to A.A. Within seventy-two hours of A.A.'s birth, Meneses signed a paternity affidavit pursuant to I.C. § 16-37-2-2.1, declaring himself to be A.A.'s biological father. On June 16, 2006, the State[1] filed a Verified Petition for Support to benefit the minor child, requesting the trial court to order Meneses to secure and maintain health coverage for the child when it becomes reasonably available and to reimburse Medicaid for fifty percent of the birthing expenses relating to A.A. On January 17, 2007, the trial court conducted a hearing on the State's petition. The next day, January 18, 2007, the trial court entered an Order, establishing A.A.'s paternity and determining that no child support is owed as the parents have continuously resided together since A.A.'s birth. In a separate judgment, issued on the same day, the trial court ordered Meneses to pay fifty percent of A.A.'s birthing expenses for an amount of $3,259.52.
*1164 On February 22, 2007, Meneses filed his Motion to Correct Error with regard to the Medicaid birthing expenses. On April 11, 2007, after conducting a hearing, the trial court denied Meneses' motion.
Meneses now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. Medicaid's Birthing Expenses

Initially, Meneses contends that the trial court erred in ordering him to reimburse Medicaid for fifty percent of his son's birthing expenses. Specifically, he asserts I.C. § 31-14-17-1 only contemplates reimbursement of a mother's medical expenses incurred during childbirth, not the infant's. On the other hand, the State argues that the statute clearly provides for the infant's birthing expenses and expenses incurred during the child's postnatal care.
Indiana Code section 31-14-17-1 stipulates that:
The court shall order the father to pay at least fifty percent (50%) of the reasonable and necessary expenses of the mother's pregnancy and childbirth, including the cost of:
(1) prenatal care;
(2) delivery;
(3) hospitalization; and
(4) postnatal care.
The interpretation of a statute is a legal question that is reviewed de novo. Sun Life Assur. Co. of Canada v. Indiana Dept. of Ins., 868 N.E.2d 50, 55 (Ind.Ct. App.2007), trans. denied. Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. Id. The first and often the last step in interpreting a statute is to examine the language of the statute. Id. When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. Id.
In support of their respective arguments, both parties rely on our decision in K.T.P. ex rel. A.S.P. v. Atchison, 848 N.E.2d 280 (Ind.Ct.App.2006). In Atchison, the State sought reimbursement from the father for medical expenses incurred by the minor child approximately thirty-four days after he was born. Id. at 281. The minor child's birth was considered normal and he was sent home after three days in the hospital. Id. However, he suddenly fell ill thirty-four days after being born and, as a result, incurred significant medical expenses during treatment. Id. The trial court determined that the medical expenses incurred at this time were not considered postnatal because they did not relate to the infant's care immediately following birth, and as such, did not require reimbursement pursuant to I.C. § 31-14-17-1. Id. at 282. In our analysis of I.C. § 31-14-17-1, we referenced the plain language of the statute and defined "postnatal" as "the care of an infant immediately following birth." Id. at 284. Comparing the instant statute with I.C. § 31-14-11-3, which provides for a child's medical expenses in a paternity action, the Atchison court determined that medical and birthing expenses are clearly separate and distinct. Id. at 285. As such, we concluded that treatment expenses of a child, re-hospitalized thirty-four days following a normal delivery, do not qualify as birthing expenses. Id.
Here, however, A.A.'s medical expenses were incurred as a result of and immediately following his birth. Applying Atchison to the present situation, we are especially persuaded by its dicta characterizing postnatal care as including an infant's treatment upon birth. Even though Medicaid *1165 billed A.A.'s medical expenses separate from his mother's, they nevertheless relate to Legunes' delivery of A.A., her subsequent hospitalization, and A.A.'s postnatal care. Moreover, our interpretation is supported by the plain language of the statute which orders the father to pay fifty percent of the reasonable and necessary expenses of mother's pregnancy and childbirth. See I.C. § 31-14-17-1. Any expenses relating to childbirth logically include expenses incurred by the infant during and immediately following birth. Ruling otherwise would make the statutory inclusion of "childbirth" futile. Accordingly, we conclude that the trial court properly ordered Meneses to reimburse Medicaid fifty percent of A.A.'s birthing expenses.

II. Equal Protection Clause

Next, Meneses contends that I.C. § 31-14-17-1 violates the Equal Protection Clause of the United States Constitution[2] because it requires the father of a child born out-of-wedlock to reimburse the infant's birthing expenses to Medicaid while no similar obligation exists for a married father.
The Fourteenth Amendment of the United States Constitution provides that "no state . . . shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause does not preclude the government's ability to classify persons or "draw lines" in the creation and application of laws, but it does guarantee that those classifications will not be based on impermissible criteria or arbitrarily used to burden a group of individuals. McVey v. Sargent, 855 N.E.2d 324, 328 (Ind.Ct.App.2006), trans. denied (quoting Lake Co. Clerk's Office v. Smith, 766 N.E.2d 707, 712 (Ind.2002)). In assessing a claim that a statute violates the Equal Protection Clause, our initial inquiry involves the applicable level of scrutiny. Bennett v. State, 801 N.E.2d 170, 175 (Ind. Ct.App.2003). Statutes that include a suspect classification and those that burden the exercise of fundamental rights receive the strictest scrutiny. Id. In order to survive such scrutiny, a statute must set forth a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose. Id.
Here, Meneses does not assert that he is a member of a suspect class or that fundamental rights are involved. Classifications not involving a suspect class or a fundamental right are reviewed under a rational basis test. McVey, 855 N.E.2d at 328. A statute can survive a rational basis scrutiny if the classification in the statute bears some rational relationship to a legitimate governmental goal. Bennett, 801 N.E.2d at 175. Furthermore, in evaluating a challenge based upon the Equal Protection Clause, we presume that a statute is constitutional. Id. The presumption continues until clearly overcome by a showing to the contrary. Id. Accordingly, Meneses has the burden of establishing the lack of a rational basis. Id.
Title XIX of the Social Security Act, popularly called "Medicaid," was enacted by the United States Congress in the Social Security Amendments of 1965, Pub.L. No. 89-97. Sullivan v. Day, 681 N.E.2d 713, 715 (Ind.1997). The Medicaid statutes create a comprehensive cooperative federal-state program for medical care under *1166 which participating States are federally financed for their medical assistance programs if they submit a State plan which comports with federal requirements. Legacy Healthcare, Inc. v. Barnes & Thornburg, 837 N.E.2d 619, 622 (Ind.Ct. App.2005), reh'g denied, trans. denied. Although State participation in Medicaid is voluntary, if a State chooses to participate, it must comply with the federal statutes and regulations governing the program. Id.
Under Medicaid's "Medical Assistance" provisions, State Medicaid plans must offer a range of prenatal, delivery, and postpartum benefits to pregnant women who do not otherwise qualify for Medicaid but whose income falls within certain income levels. See 42 U.S.C. § 1396a(a)(10)(A)(i)(IV). Indiana's Medicaid provisions are governed by I.C. § 12-15 et seq.
Pursuant to 42 U.S.C. § 1396k(a)(1)(A) & (B), a State's Medicaid plan shall require an eligible individual to assign to the State any rights with regard to payment for medical care from any third party and to cooperate with the State in establishing the paternity of a child born out-of-wedlock in order to obtain support payments. Under Indiana's statute, when a paternity affidavit is executed, as was done here, an order establishing paternity and child support may be obtained at a child support hearing without any further proceedings to establish paternity. See I.C. § 31-14-11-1. As part of the State's authority to establish paternity, I.C. §§ 31-14-11 et seq. and 31-14-17-1 allow the State to petition the trial court for a support order, which includes the expenses associated with childbirth.
Meneses now claims that he is treated differently from married fathers in that only fathers with children born out-of-wedlock are held responsible for fifty percent of the child's birthing expenses. See I.C. § 31-14-17-1. If unmarried to the mother, a man has no legal obligation to provide any type of support on behalf of the child, until paternity is established; whereas, on the other hand, a familial support obligation is inherently associated with a marriage. In an effort to protect an unmarried mother with child, the legislature enacted provisions requiring men to be financially responsible for their offspring through the enforcement of support obligations and payment of expenses associated with a pregnancy. Accordingly, the State's interest in requiring men to provide for their children born out-of-wedlock and reimburse birthing expenses is a legitimate goal in that it requires a man to accept financial accountability, similar to the one voluntarily carried by married fathers.
We find Meneses argument that a support order is unnecessary because he is living with Legunes to be unavailing. Even though Meneses and Legunes were cohabitating at the moment of A.A.'s birth, he still was under no legal obligation to provide for his child's needs. In this regard, we agree with the Second Circuit Court's observation that "in enacting 42 U.S.C. § 1396k, Congress clearly did not intend to encourage parents to live out-of-wedlock in the same home with their children in such a manner that they could receive carte blanche public assistance." Perry v. Dowling, 95 F.3d 231, 238 (2nd Cir.1996). Rather, Congress specifically intended that unwed fathers be held accountable for the costs of services provided to the mother and infant during pregnancy and thereafter. See id.
Therefore, concluding that I.C. § 31-14-17-1, which requires an unmarried father to reimburse fifty percent of his child's birthing expenses, is rationally related to the State's legitimate goal of imposing similar *1167 financial responsibility on unwed fathers as on married fathers, we find that the challenged statute is constitutional. We affirm the trial court's decision.

III. Due Process Clause

Lastly, Meneses contends that the State's action to seek reimbursement of A.A.'s birthing expenses pursuant to I.C. § 31-14-17-1 violates his Due Process rights under the United States Constitution. Specifically, he maintains that Indiana's statute creates an irrebutable presumption of an out-of-wedlock father's ability to pay fifty percent of the birthing expenses without conducting a hearing to inquire into his actual ability to pay.
The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. In Re Paternity of M.G.S., 756 N.E.2d 990, 1004 (Ind.Ct.App.2001), trans. denied. "An essential principle of due process is that deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Id. at 1005 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). We must identify the precise nature of the private interest threatened by the State before we can properly evaluate the adequacy of the State's process. Id.
Here, Meneses appears to argue that imposing an automatic reimbursement of fifty percent of A.A.'s birthing expenses deprives him of his property without allowing him an opportunity to be heard on his ability to pay this amount. The record reflects that on June 16, 2006, the State filed a verified petition for support requesting the trial court to order Meneses to reimburse fifty percent of A.A.'s birthing expenses. The State based its claim on I.C. § 31-14-17-1, which provides, in pertinent part, that "the court shall order the father to pay at least fifty percent . . ." (emphasis added). Meneses disputed the State's claim, asserting that he is only responsible for Legunes' expenses and not his child's. Following a hearing, the trial court granted the State's motion. Thereafter, on February 22, 2007, Meneses filed his Motion to Correct Error with regard to A.A.'s birthing expenses. On April 11, 2007, after conducting another hearing, the trial court denied Meneses' motion.
Both the federal and State Medicaid system require an out-of-wedlock father to reimburse Medicaid for birthing expenses. See U.S.C. 1396k(a)(1)(A) & (B) and I.C. § 31-14-17-1. These statutes do not impose an obligation on the trial court to conduct an inquiry into a father's ability to pay; rather, they impose a certain financial responsibility on the father. In this light, Indiana's statutory system requires the father to reimburse at least fifty percent of the expenses, with the possibility by the trial court to increase this amount above the presumptive floor on the condition the trial court enters findings as to why an increase is appropriate. See Matter of Paternity of A.J.R., 702 N.E.2d 355, 363 (Ind.Ct.App.1998). Here, the trial court imposed the statutory minimum of fifty percent.[3] Although the trial court did not inquire into Meneses' ability to pay a certain amount, as it was not required to, the trial court nevertheless, commented that it considered Meneses' ability to pay the amount over a period of time.
*1168 Accordingly, we hold that Meneses' obligation to reimburse Medicaid's expenses was not imposed without prior notice and without an opportunity to be heard. As we find the hearing in this case appropriate to the nature of the obligation imposed by I.C. § 31-14-17-1, we conclude that the challenged statute is constitutional. See In Re Paternity of M.G.S., 756 N.E.2d at 1005.

CONCLUSION
Based on the foregoing, we conclude that the trial court properly ordered Meneses to reimburse Medicaid for fifty percent of the medical expenses incurred during the birth of his son, pursuant to Ind.Code § 31-14-17-1. We further conclude that I.C. § 31-14-17-1 does not violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment of the United States Constitution.
Affirmed.
FRIEDLANDER, J., and SHARPNACK, J., concur.
NOTES
[1] In this action, the State is not directly representing Legunes but rather, is representing the interests of the State because Legunes is a Title IV-D recipient. Collier v. Collier, 702 N.E.2d 351, 355 (Ind.1998).
[2] Although Meneses asserts a violation of the Equal Protection Clause under both the United States Constitution and the Indiana Constitution, he fails to develop an argument with respect to the Indiana Constitution. As such, we will review his claim only as it relates to the United States Constitution. See Ind. Appellate Rule 46(A)(8).
[3] We note that I.C. § 31-14-17-1 clearly imposes a financial responsibility on an unmarried father to reimburse fifty percent of the reasonable and necessary expenses of the mother's pregnancy and childbirth, as determined in this opinion. However, we wish to clarify that our opinion today does not foreclose a trial court's review of an unmarried father's ability to pay during any subsequent proceedings.