## William E, WRIGHT, Appellant–Petitioner,

v.

## STATE of Indiana, Appellee–Respondent.

No. 48A02–0708–PC–678.

Court of Appeals of Indiana.

March 4, 2008.

Rehearing Denied May 22, 2008.

Susan K. Carpenter, Public Defender of Indiana, John T. Ribble, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, William E. Wright (Wright), appeals the post-conviction court's denial of his petition for post-conviction relief.

We reverse and remand.

### ISSUE

Wright raises two issues, one of which we find dispositive: Whether Wright's trial and appellate counsel were ineffective for failing to challenge the enhancement of Wright's sentence due to his status as a repeat sexual offender as defined by Ind. Code § 35-50-2-14.

### FACTS AND PROCEDURAL HISTORY

In our memorandum decision, *Wright v. State*, 48A05-0402-CR-88, 812 N.E.2d 1164 (Ind.Ct.App. July 14, 2004), *trans. denied*, we stated the facts that supported Wright's conviction as follows:

The undisputed facts are that K.N. began dating Wright in July 2001 and started living with him in August 2001. Cory Hamner also lived in the house with Wright and K.N. for about a month, ending February 2002. On the evening of February 3, 2002, the three of them went to a bar in Anderson, Indiana. K.N. did not drink anything because she had to go to work early the next morning, but both Wright and Hamner drank and appeared to be intoxicated. At some point, Wright asked K.N. if they were going to have sex later, and K.N. replied in the affirmative. All three left the bar shortly after midnight.

After they got home, K.N. went to the bedroom to go to bed, and Wright approached her requesting to have sex. K.N. declined, stating that she was tired and wanted to go to bed. Wright pulled the covers off of her and stated that if she did not have sex with him she was not going to go to work or bed. Wright threw her pillow, took the alarm clock and threw it across the room, and then left the bedroom. K.N. retrieved her blanket and pillow and laid back on the bed.

Wright returned a short time later and told K.N. that he was going to have sex with her, and she again declined. Wright repeated that K.N. would not be going to work or to sleep if she did not have sex with him. Wright then laid on top of K.N. and again took the blankets off of her. K.N. tried to push Wright off of her and told him to get off of her, but Wright persisted. Wright then wrapped his arm around K.N.'s head and, by pushing down on K.N.'s mouth and nose with his hand, restricted her breathing. K.N. struggled to get up, and the two fell off of the bed onto the floor in the course of the struggle. K.N.

continued her physical struggle and was yelling at Wright telling him to get off of her, but Wright continued pushing his hand over her face.

During the struggle, Hamner came to the door of the bedroom and K.N. told him to call the police. Hamner refused, but told Wright to get off of K.N. Wright then hit K.N. in the nose, got up, and went after Hamner. K.N. attempted to leave the house as Wright went after Hamner, but Wright stopped her. Wright grabbed the cordless phone and took the batteries out. He then threw the phone at Hamner and went after him. K.N. then successfully exited the house and ran across the street to a police officer's house. K.N. had blood around her nose, she was crying, and there was a bruise on her neck.

Slip op. pp. 2–4.

On February 8, 2002, the State filed an Information charging Wright with Count I, attempted rape, a Class B felony, I.C. § 35–42–4–1; Count II, criminal confinement, a Class D felony, I.C. § 35–42–3–3; and Count III, battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35–42–2–1. On March 18, 2002, the State filed an additional Information adding Count IV, which alleged that Wright was a repeat sex offender, as defined by I.C. § 35–50–2–14. On July 23, 2003, a jury found Wright guilty of attempted rape, criminal confinement, and battery resulting in injury. On that same day, during a bifurcated proceeding, Wright's own counsel elicited an admission from him that he was a repeat sex offender.

Wright appealed these convictions arguing (1) there was insufficient evidence to sustain his conviction for attempted rape, (2) his trial counsel was ineffective for failing to object to certain statements by the prosecutor, and (3) that Wright's convictions for attempted robbery and criminal confinement together violated the prohibition on double jeopardy. On July 14, 2004, we issued our decision that there was sufficient evidence to sustain Wright's attempted rape conviction and that Wright's counsel was not ineffective for failing to object to the prosecutor's statements, but that the attempted rape and criminal confinement convictions violated the principles of double jeopardy. Accordingly, we remanded so that the trial court could correct the judgment.

On January 26, 2006, the trial court entered an amended abstract of judgment, which sentenced Wright to twenty years imprisonment for Count I, attempted rape, enhanced by eight years for being a repeat sex offender, and one year for Count III, battery causing injury. On November 30, 2005, Wright filed a Petition for Post–Conviction Relief, and on November 2, 2006, Wright filed an Amended Petition for Post–Conviction Relief.

On April 20, 2007, the post-conviction court conducted a hearing on Wright's argument that his trial and appellate counsels were ineffective for failing to challenge the trial court's enhancement of Wright's sentence for being a repeat sex offender. On June 12, 2007, the post-conviction court denied Wright's petition.

Wright now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Res Judicata*

 First, we address the State's claim that *res judicata* bars our consideration of whether Wright's trial counsel was ineffective for any reason because his appellate counsel has already raised that claim on direct appeal. *Res judicata* prevents the repetitious litigation of disputes that are essentially the same. *Collins v. State*, 873 N.E.2d 149, 157 (Ind.Ct.App.

2007), *trans. denied.* The doctrine of *res judicata* is divided into two branches: claim preclusion and issue preclusion. *Id.* Claim preclusion applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Afolabi v. Atlantic Mortg. & Investment Corp.,* 849 N.E.2d 1170, 1173 (Ind.Ct.App.2006).

> In order for a claim to be precluded under the doctrine of *res judicata,* the following four requirements must be satisfied: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

*Id.*

We have stated before that, "[I]f the issue is not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a post-conviction proceeding." *Gray v. State,* 841 N.E.2d 1210, 1213 (Ind.Ct.App.2006), *trans. denied.* Since Wright's appellate counsel chose to allege that Wright's trial counsel was ineffective, although for another reason, we conclude that the claim preclusion branch of *res judicata* bars our consideration of whether his trial counsel was ineffective. Nevertheless, Wright's claim of ineffective assistance of appellate counsel was not available during Wright's direct appeal, for obvious reasons. Therefore, his claim of ineffective assistance of appellate counsel is available for our review.

## II. *Ineffective Assistance of Appellate Counsel*

 Post-conviction hearings do not afford defendants the opportunity for a

"super appeal." *Moffitt v. State,* 817 N.E.2d 239, 248 (Ind.Ct.App.2004). The petitioner has the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *see also id.* Because Wright is appealing from a negative judgment, to the extent his appeal turns on factual issues, he must provide evidence that as a whole unerringly and unmistakably leads us to believe there is no way within the law that a post-conviction court could have denied his post-conviction relief petition. *See Stevens v. State,* 770 N.E.2d 739, 745 (Ind.2002), *reh'g denied, cert. denied,* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56. It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law. *Godby v. State,* 809 N.E.2d 480, 482 (Ind.Ct.App.2004), *trans. denied.*

 The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness. *Bieghler v. State,* 690 N.E.2d 188, 193 (Ind.1997). *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied,* established that the defendant must prove (1) his or her counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's failure to meet prevailing professional norms, the result of the proceeding would have been different. *Johnson v. State,* 832 N.E.2d 985, 996 (Ind.Ct.App.2005), *reh'g denied, trans. denied* (citing *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). Essentially, the defendant must show that counsel was deficient in his or her performance and that deficiency resulted in

prejudice. *Johnson,* 832 N.E.2d at 1006. Because all criminal defense attorneys will not agree on the most effective way to represent a client, "isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Bieghler,* 690 N.E.2d at 199. Thus, there is a strong presumption that counsel rendered adequate assistance and used professional judgment. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001).

## A. *Deficient Performance*

■ Wright argues that his appellate counsel was ineffective for either: (1) failing to allege his trial counsel was ineffective for eliciting an admission from Wright that he was a repeat sex offender as defined by I.C. § 35–50–2–14; or (2) argue that the trial court's enhancement of Wright's sentence for the same reason was fundamental error. Typically, an appellate counsel could not be ineffective for failing to allege a trial counsel's ineffectiveness on direct appeal, because a claim of ineffective trial counsel is properly raised in a post-conviction proceeding. *See Gray,* 841 N.E.2d at 1213. However, Wright's appellate counsel's actions, which bar our consideration of Wright's trial counsel's effectiveness, makes this an atypical situation.

In *Bieghler,* our supreme court identified three categories of appellate counsel ineffectiveness claims, including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler,* 690 N.E.2d at 193–195. Wright's appellate counsel's actions, which bar our determination of whether his trial counsel was ineffective due to principles of *res judicata,* fall into this second category.

■ Our analysis relies in large part upon our interpretation of the repeat sex offender statute. The interpretation of a statute is a legal question which we review *de novo.* *In re Paternity of A.R.S.A.,* 876 N.E.2d 1161, 1164 (Ind.Ct. App.2007). Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *Id.* When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id.*

■ To develop his argument that his appellate counsel was deficient, Wright first relies on *Ellis v. State,* 736 N.E.2d 731, 737 (Ind.2000). In *Ellis,* our supreme court considered whether a trial court's order for consecutive maximum sentences exceeded the limitations of Indiana Code section 35–50–1–2(c), the consecutive and concurrent terms statute, which states in pertinent part:

> The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, *except for crimes of violence,* the total of the consecutive terms of imprisonment, ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

(Emphasis added). Indiana Code section 35–50–1–2(a) defines what is included in "crimes of violence," by listing fourteen specific crimes, such as murder (I.C. § 35–42–1–1), aggravated battery (I.C. § 35–42–2–1.5), and child molesting (I.C. § 35–42–4–3). However, no attempt crimes are listed.

Ellis argued that the statutory limit requiring presumptive sentences applied to his convictions for attempted murder, because, although murder is listed as a crime

of violence, attempted murder is not. *Ellis*, 736 N.E.2d at 737. Our supreme court agreed with Ellis for two reasons: (1) if the legislature had intended for the list of crimes of violence to include other crimes (*i.e.*, attempted murder) then the offense would have appeared in the statute; and (2) the rule of lenity requires that criminal statutes be strictly construed against the State. *Id.* (citing *Ballard v. State*, 715 N.E.2d 1276 (Ind.Ct.App.1999); *Walker v. State*, 668 N.E.2d 243, 246 (Ind.1996)).

Wright urges us to apply the same analysis to the repeat sex offender statute, I.C. § 35–50–2–14, to conclude that although rape is included as a sex offense under the statute, attempted rape is not; therefore Wright, who was convicted of *attempted* rape, could not have been a repeat sex offender by reason of that conviction. Indiana Code section 35–50–2–14(a), provides in pertinent part:

> The state may seek to have a person sentenced as a repeat sexual offender for a sex offense under [I.C. § ] 35–42–4–1 through [I.C. § ] 35–42–4–9 or [I.C. § ] 35–46–1–3 ... by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated one (1) prior unrelated felony conviction for a sex offense under [I.C. § ] 35–42–4–1 through [I.C. § ] 35–42–4–9 or [I.C. § ] 35–46–1–3.

The repeat sex offender statute is formatted differently from the consecutive and concurrent terms statute addressed in *Ellis*, in as much as it does not list the qualifying offenses by name, but rather identifies them solely by reference to a series of Indiana Code section numbers, followed by the section number for the offense of incest, which is found in another article. However, such a formatting difference does not alter the effect of the statute in identifying qualifying offenses. Similarly to the consecutive and concurrent terms statute, the repeat sex offender statute does not make any specific reference to attempt crimes, or the Indiana Code section defining attempt, I.C. § 35–41–5–1.

The State urges us to distinguish the repeat sex offender statute from the consecutive and concurrent terms statute, by asking us to focus on the word "under" included in the repeat sex offender statute. (Appellee's Br. p. 11, 13). Specifically, the State contends that Wright was charged and convicted of attempted rape, which necessarily requires the use of the rape statute, I.C. § 35–42–4–1, a qualifying offense, and therefore his offense falls under a qualifying offense. However, the State does not cite any authority to develop this proposed interpretation by focusing on the word *under*.[1]

As Wright contends in his Reply Brief, the State's argument is unavailing, because of our supreme court's holding in *Crawford v. State*, 755 N.E.2d 565, 567–68 (Ind. 2001). In *Crawford*, our supreme court addressed another similar statute, which enhances a sentence if a firearm is used in the commission of certain offenses. *Id.* (citing I.C. § 35–50–2–11.) The statute defines an offense, in part as: "a felony *under* [I.C. § ] 35–42 ...." *Id.* (emphasis added). Despite the use of the word *under* in I.C. § 35–50–2–11, our supreme court acknowledged that *stare decisis* required application of the reasoning relied upon in *Ellis* to determine that murder would be included in the list of offenses, but attempted murder would not. *Crawford*, 755 N.E.2d at 568.

---

**1.** Nor does the State propose a definition for the word *under* that would require any such interpretation.

In light of our supreme court's decisions in *Ellis* and *Crawford*, we must apply the rule of lenity, and conclude that the crime of attempted rape is not an offense included in the repeat sex offender statute, I.C. § 35–50–2–14. Therefore, Wright's trial counsel erroneously elicited an admission from Wright that he was a repeat sex offender although his offense was not included in the repeat sex offender statute, and, therefore, Wright's appellate counsel provided deficient performance for failing to either allege his trial counsel ineffective for this specific reason or argue that the enhancement of Wright's sentence was fundamental error.

### B. *Prejudice*

Upon reviewing the record, we note that Wright's sentence for attempted rape was enhanced by eight years due to his status as a repeat sex offender. Since we have determined that Wright's conviction for attempted rape did not make him a repeat sex offender, as defined by I.C. § 35–50–2–14, we conclude that if his appellate counsel had properly raised this issue, there was a reasonable probability that his sentence would not have been enhanced. *See Johnson v. State*, 832 N.E.2d at 996. Moreover, we conclude that had Wright's appellate counsel appropriately presented the matter to this court, we would have determined that Wright was not a repeat sex offender, and his sentence could not be enhanced for this reason.

### CONCLUSION

For the foregoing reasons, we conclude that Wright's appellate counsel provided ineffective assistance.

Reversed and remanded.

2. Following our Supreme Court's decision in *Ellis*, the General Assembly amended Ind. Code § 35–50–1–2 to include attempted mur-

MAY, J., concurs.

KIRSCH, J., concurs with separate opinion.

KIRSCH, Judge, concurring.

*Stare decisis* requires that we follow our Supreme Court's decisions in *Crawford v. State*, 755 N.E.2d 565 (Ind.2001) and *Ellis v. State*, 736 N.E.2d 731 (Ind.2000).[2] If attempted murder is not a crime of violence, notwithstanding the fact that a victim is shot in the throat (*Crawford*) or in the face or hand (*Ellis*), I suppose attempted rape is not a sex offense. Accordingly, I concur, albeit reluctantly.

der in the list of crimes of violence. *Crawford*, however, which relied on *Ellis*, was decided after the amending legislation.