## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2015, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Mark Hurst<br>Pendleton, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | J.T. Whitehead<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Hurst,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | December 7, 2015<br><br>Court of Appeals Case No.<br>64A04-1505-PC-293<br><br>Appeal from the Porter Superior Court<br><br>The Honorable Mary R. Harper, Judge<br><br>Trial Court Cause No.<br>64D05-1403-PC-1842 |

**Mathias, Judge.**

[1]     The Porter Superior Court denied the petition for post-conviction relief filed by Mark Hurst ("Hurst"). Hurst appeals pro se and argues that the post-conviction

court erred when it rejected Hurst's claim that his sentence was improperly enhanced.

We affirm.

## Facts and Procedural History

The facts underlying Hurst's conviction and sentence were set forth in our memorandum decision on Hurst's direct appeal:

> In 2008, Kevin Waite (Waite) joined Facebook. Sometime in 2010, Waite started chatting with Natalie Coats (Coats) on Facebook. Waite knew Coats from his freshmen year at school. Waite's hope was to have a relationship with Coats and, he asked her out on a date on several occasions. She kept on putting it off due to other plans but Coats eventually agreed to go out on a date with Waite. On December 4, 2011, Waite and Coats texted each other back and forth. Waite wanted to go to a movie with Coats but Coats wanted to go out to a bar and have fun. Coats then gave Waite the address to a bar, Shenanigan's. When Waite arrived, Coats was already there, together with her friend Brittany Foley (Foley), and two other men, one of which would later be identified as Hurst. Coats and Foley asked Waite to buy them a drink. Waite bought both of the girls a pitcher of beer. The girls introduced Waite to Hurst and the other male. The whole night, the group kept referring to Hurst as 'Alfred', so Waite never learned Hurst's real name.
>
> At some point during the evening, Coats and Foley asked Waite if they could get a ride home and Waite told them that he would think about it. Foley asked Waite for his cell phone so that she could text him later. Foley also inquired if she could get twenty dollars for child support. Waite refused and he told Foley that he was unemployed and could not afford to give her the money. Hurst then approached Waite and told him that he had

overheard that Waite did not want to drive Coats and Foley home and that he was going to leave them "high and dry." (Transcript pp. 93–94). As they continued talking, Hurst told Waite to drive him home as well. Waite asked whether it was necessary to drop all of them off and Hurst responded "yes you do if you'd like to keep your precious teeth." (Tr. p. 95). This time, Waite agreed because he felt intimidated and scared. After that, Waite went to the restroom where he wanted to either call his parents or the police for help. However, Hurst followed him to the restroom, cornered him in the stall, and told Waite to show him the last people he called and texted. Waite agreed. At that point, Coats and Foley came into the men's restroom and asked if everything was alright. Out of fear, Waite told the girls that everything was fine, which made them leave the bathroom. Waite walked over to the sink to wash his hands and Hurst informed him "you're disrespecting me and my lady friends so you are going to buy pitchers of beer and shots for us." (Tr. p. 96). Hurst followed Waite to the bar where Waite bought pitchers of beer and shots for all of them. Hurst also told Waite to leave a ten or fifteen dollar tip for the bartender which Waite did out of fear. They drank the first round and Hurst demanded that Waite buys another round of beer and shots. At that point, Hurst had to leave for about 10 minutes, but before he left, he asked his other male friend to follow Waite to the parking lot and beat him up if he tried to leave.

When Hurst returned, he demanded Waite go to the ATM and get twenty dollars for Foley. Waite drove Hurst and Foley to an ATM located at a Marathon gas station close by. Waite got out of the car and went over to the ATM and as he was putting his pin number in, Hurst pushed him aside and told Waite he would do it himself. He then asked Waite to drive to another ATM to get more money. At that time, Hurst had Waite's debit card and cell phone. Hurst handed Waite's debit card to Foley, who entered the Marathon gas station to retrieve more money from Waite's bank account. After returning to Shenanigans, Hurst

demanded that they leave again to buy food. Waite drove Foley and Hurst to Dennys. When they got to Dennys, Foley exited the car and asked Waite if he wanted anything, and Waite told her he was okay. Waite tried to get out of the car but Hurst told him to remain seated. At that point, Hurst asked Waite to give him his driver's license so he could write down Waite's information just in case Waite tried to notify the police. Out of fear, Waite handed it to him. Hurst informed Waite that if he attempted to notify the police, Hurst would go over to Waite's house with his buddies and beat him and his family. Hurst also told Waite that he was debating what to do with him next, whether to beat him up, or take his car. Hurst added, "at least you have your life and a little less money." (Tr. p 120). Waite then drove Hurst and Foley to Foley's friend's trailer. When they got to their destination, Hurst and Foley got out of the car. Hurst told Waite his cellphone was in the back seat, he kicked Waite's car, and said, "go, go, go, you know, I'm letting you go." (Tr. p 122).

*Hurst v. State*, No. 64A03-1209-CR-391, 2013 WL 3874753, slip op. at 2-4 (Ind. Ct. App. July 25, 2013).

[4] As a result, the State charged Hurst on January 11, 2012, with Class C felony robbery and Class D felony criminal confinement. On March 20, 2012, the State amended the charging information to add an allegation that Hurst was a habitual offender. A jury trial was held on April 23, 25, and 26, 2012, at the conclusion of which the jury found Hurst guilty as charged. On August 14, 2012, the trial court sentenced Hurst to six years for his robbery offense enhanced by eight years because of his habitual offender adjudication. The court also sentenced him to a concurrent sentence of two years for the criminal confinement charge.

On direct appeal, Hurst argued that the trial court abused its discretion by admitting evidence regarding: Hurst's prior convictions for residential entry and theft, a video recording of Hurst and his victim at the ATM machine, and testimony regarding a photograph used to identify Hurst. We rejected these arguments and affirmed Hurst's convictions. *Id.*, slip op. at 13.

On February 20, 2014, Hurst filed a petition for post-conviction relief, claiming *inter alia* that the trial court improperly imposed a doubly enhanced sentence. Then, on March 24, 2014, Hurst filed a motion to correct erroneous sentence, again claiming that his sentence was improperly doubly enhanced. The trial court denied this motion on July 15, 2014. Hurst then filed an amended petition for post-conviction relief on September 9, 2014, again repeating his sentencing claim. The trial court held an evidentiary hearing on Hurst's post-conviction petition on March 26, 2015, but Hurst presented no evidence. The trial court entered an order denying Hurst's petition on April 22, 2015. Hurst now appeals.

## Post-Conviction Standard of Review

In addressing Hurst's claims, it bears repeating that post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008).

Thus, on appeal from the denial of post-conviction relief, the petitioner appeals from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 643-44.

[8] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

## Discussion and Decision

[9] Hurst claims that the trial court erred in applying the habitual offender enhancement to his sentence. Although Hurst's appellate argument is sparse, from what we can discern, he contends that the habitual offender enhancement was improper because one of the predicate felonies supporting the habitual offender determination was itself allegedly enhanced from a misdemeanor to a felony.

[10] The general rule regarding multiple sentence enhancements is that a trial court cannot impose a double enhancement absent explicit legislative direction. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010). Three types of statutes authorize enhanced sentences for recidivist offenders: the general habitual offender statute; specialized habitual offender statutes; and progressive-penalty statutes. *Dye v. State*, 972 N.E.2d 853, 857 (Ind. 2012), *aff'd on reh'g*, 984 N.E.2d 625 (Ind. 2013).

[11] Here, the State alleged that Hurst had two prior, unrelated felonies: a 1998 conviction in Illinois for residential burglary and theft and a 2007 conviction in Indiana for Class C felony battery. Hurst makes no challenge to the validity of his Illinois conviction and instead focuses his post-conviction argument on the validity of his 2007 Indiana conviction for felony battery. At the habitual offender portion of the trial, Hurst stipulated to the fact that, on August 2, 2007, he was convicted of Class C felony battery causing serious bodily injury for an incident that occurred on July 23, 2005. He was sentenced for this conviction on August 31, 2007, to eight years in the Department of Correction.

[12] Hurst notes that he was originally charged with Class A misdemeanor battery, but at some point, the charge was amended to Class C felony battery causing serious bodily injury—the crime for which he was convicted. Hurst claims that because this offense was elevated to a Class C felony, it cannot form the basis of his habitual offender adjudication. For a variety of reasons, Hurst's argument fails.

## A. Waiver by Procedural Default

First, nothing in the record suggests that this claim was somehow unknown or unavailable to Hurst during his direct appeal. To the contrary, his claim of sentencing error was available on direct appeal, and by failing to present it on direct appeal, it is now waived by procedural default. *See Bunch v. State*, 778 N.E.2d 1285, 1289 (Ind. 2002) (holding that defendant's claim of sentencing error was procedurally defaulted on post-conviction where the sentencing issue was available but not raised on direct appeal); *Taylor v. State*, 780 N.E.2d 430, 435 (Ind. Ct. App. 2002) (following *Bunch* in holding that defendant's claim of sentencing error was unavailable in petition for post-conviction relief where the issue could have been raised on direct appeal but defendant filed no direct appeal); *see also Collins v. State*, 817 N.E.2d 230, 232-33 (Ind. 2004) (adopting holding in *Taylor*).

## B. Res Judicata

Even if Hurst's claim was not procedurally defaulted, he would still not prevail. On March 24, 2014, after his direct appeal, and after filing his first petition for post-conviction relief, Hurst filed a motion to correct erroneous sentence.[1] In his motion, Hurst claimed that his habitual offender enhancement was improper

---

[1] A motion to correct erroneous sentence provides prompt, direct access to an uncomplicated legal process for correcting an erroneous or illegal sentence. *Robinson v. State*, 805 N.E.2d 783, 785 (Ind. 2004). A motion to correct sentence is a remedy that is only appropriate when the sentence is erroneous on its face. *Id*. at 786. A motion to correct sentence should be narrowly confined to claims apparent from the "face of the sentencing judgment, and the 'facially erroneous' prerequisite should henceforth be strictly applied." *Id*. at 787. If a sentencing claim is not facially apparent, then a motion to correct sentence is not a proper remedy. *Id*.

because it was based on his battery conviction which had itself been enhanced. In his original motion to correct erroneous sentence, Hurst claimed that his conviction for battery had been enhanced to robbery. The trial court noted that battery cannot be elevated to robbery and that battery is itself never elevated based upon a prior conviction. Appellant's App. pp. 10-11. In his motion to correct error from the trial court's denial of his motion to correct erroneous sentence, Hurst apparently corrected his argument to refer to his conviction for battery. *See id*. at 13. The trial court denied the motion to correct erroneous sentence on its merits.

[15]  Hurst presents essentially this same argument once again on post-conviction review. The trial court considered Hurst's motion to correct erroneous sentence on the merits and concluded that his claim of sentencing error was without merit. Although Hurst filed a motion to correct error from the trial court's denial of his motion to correct erroneous sentence, which the trial court denied, nothing in the record indicates that he filed an appeal from this denial. Thus, a final judgment has been entered on the merits of the claim Hurst now presents in his petition for post-conviction review.

[16]  Res judicata prevents the repetitious litigation of disputes that are essentially the same. *Wright v. State*, 881 N.E.2d 1018, 1021-22 (Ind. Ct. App. 2008), *trans. denied*. The claim preclusion branch of res judicata is applicable in this case. Claim preclusion applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id*. In order for a claim to be

precluded under the doctrine of res judicata, the following four requirements must be satisfied: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *Id.*

[17] Here, nothing in the record indicates that the trial court that denied Hurst's motion to correct erroneous sentence was anything other than a court of competent jurisdiction; the trial court denied the motion on its merits; the issue of Hurst's sentence was at issue and determined in the motion; and the parties are the same. We therefore conclude that Hurst's attempt to relitigate the issue of the propriety of his habitual offender enhancement is precluded as res judicata. *See Saunders v. State*, 794 N.E.2d 523, 527 (Ind. Ct. App. 2003) (holding that defendant's post-conviction claim that his sentence was inappropriate was precluded by res judicata where the issue of the reasonableness of his sentence was decided on direct appeal).

### C. Waiver for Failure to Present a Cogent Argument

[18] We further conclude that Hurst's claim is waived for failure to present a cogent argument. A party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. *Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) (citing Ind. App. Rule 46(A)(8)(a)). Although Hurst is proceeding pro se, pro se litigants are held to the same standard regarding rule compliance as are

attorneys duly admitted to the practice of law and must comply with the appellate rules to have their appeal determined on the merits. *Id.*

[19] Hurst cites to no authority to support his contention. The few cases he does cite simply stand for the proposition that a trial court has a duty to correct an erroneous sentence, *see Senn v. State*, 766 N.E.2d 1190, 1194 (Ind. Ct. App. 2002), and that a facially erroneous sentence may be corrected even if not presented in motion to correct error. *See Watkins v. State*, 588 N.E.2d 1342, 1344 (Ind. Ct. App. 1992) (referring to former requirement that a party file a motion to correct error to preserve an issue for appeal).

### D. Hurst's Claim is Meritless

[20] Lastly, even if we were to overlook that Hurst's current claim is barred by procedural default, res judicata, and waiver, Hurst's claim is without merit. Hurst claims that his sentence was subject to double enhancement. He is incorrect.

[21] Nothing in the record supports Hurst's contention that his conviction for Class C felony battery was enhanced. Instead, it appears that the State initially charged Hurst with Class A misdemeanor battery but later amended the charge to Class C felony battery causing serious bodily injury, the crime for which he was ultimately convicted. Thus, Hurst was not convicted under a "progressive penalty" statute that enhances a crime based upon the commission of a prior crime of the same or similar sort. *See Dye*, 972 N.E.2d at 857.

The bottom line is that Hurst was not subject to "double enhancement" because his current sentence was enhanced only once by the general habitual offender statute. The fact that his prior conviction happened to be a more serious form of battery is inapposite.

## Conclusion

For all of these reasons, we conclude that the trial court did not clearly err in denying Hurst's petition for post-conviction relief.

Affirmed.


Baker, J., and Bailey, J., concur.